MORA DEVELOPMENT CORP., demandante y recurrida, *v.* ÁNGEL L. SANDÍN e HILDA GONZÁLEZ DE SANDÍN, demandados y recurrentes.

*Número:* O-84-634     *Resuelto:* 29 de abril de 1987

*María Dolores Fernós,* de Servicios Legales de Puerto Rico, abogada de los recurrentes; *Juan López Palmer,* abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

■ La familia Sandín-González cuestiona una sentencia de desahucio por falta de pago dictada por la vía sumaria que provee la Ley de Desahucio, 32 L.P.R.A. secs. 2821–2838. En su recurso reclaman el derecho a invocar, dentro del trámite sumario, la defensa de incumplimiento del arrendador con las leyes y reglamentos federales que gobiernan importantes aspectos del contrato en controversia. Resolvemos que el incumplimiento de un casero participante en el programa de subsidios federales conocido como Sec. 8, con su obligación de revisar y ajustar la renta por mandato legal y contractual, constituye una defensa oponible al arrendador en el juicio sumario provisto por ley.

# I

La existencia de sectores sociales que precisan una vivienda adecuada ha originado la creación de un complejo programa de asistencia. (¹)

En el 1974 el Congreso federal aprobó la ley conocida como *Housing and Community Development Act* (H.C.D.A.), 42 U.S.C. sec. 1437 *et seq.*, estatuto que estableció un plan de rentas subsidiadas para personas de bajos ingresos, comúnmente conocido como Sec. 8. (²) Por medio de este programa los caseros participantes alquilan sus viviendas a inquilinos elegibles de bajos ingresos, quienes pagan por concepto de renta una suma de dinero que no excede de un porcentaje de sus ingresos. (³) El Gobierno federal subsidia a los arrendatarios, a través del pago directo al casero, de la porción remanente de la renta del mercado. 42 U.S.C. sec. 1437f (b) (2); 24 C.F.R. sec. 880.101 (b) (1987); Cooper, *Section 8 Existing Housing Evictions*, 27 J. Urb. and Contemp. L. 417 (1984). A cambio del

---

(¹) En Puerto Rico, aunque con otro matiz, contamos en materia de arrendamientos urbanos, con legislación de protección a los inquilinos. Véase la Ley de Alquileres Razonables, Ley Núm. 464 de 25 de abril de 1946 (17 L.P.R.A. sec. 181 *et seq.*) y Ley Núm. 6 de 26 de junio de 1980 (32 L.P.R.A. sec. 2824 *et seq.*).

(²) La idea y concepto de la Sec. 8 provienen de la Sec. 23 del programa de rentas establecido por el *Housing and Urban Development Act* de 1965 (42 U.S.C. sec. 1421 (b)), todavía parcialmente en operación. Bajo la Sec. 23 del programa de "viviendas ya existentes", el Departamento de Vivienda Federal (H.U.D.), a través de las agencias estatales o locales, arrienda viviendas al precio del mercado para luego *subarrendarlas* a los inquilinos de bajos ingresos. Heen, *Due Process Protections for Tenants in Section 8 Assistted Housing: Prospects for a Good Cause Eviction Standard*, 12 Clearinghouse Rev. 1 (1979); L. M. Friedman y J. E. Krier, *A New Lease on Life: Section 23 Housing and the Poor*, 116 U. Pa. L. Rev. 611 (1968); Nota, *Federal Leased Housing Assistance in Private Accommodations: Section 8*, 8 U. Mich. J.L. Ref. 676 (1975); Nota, *The New Leased Housing Program: How Tenantable a Proposition?*, 26 Hastings L.J. 1145 (1975).

(³) Estas cantidades están sujetas a variación por razones de cambio en el ingreso familiar, la composición familiar, gastos médicos extraordinarios o cualquier otro gasto extraordinario. 42 U.S.C. sec. 1437f (c) (3).

recibo de los subsidios, los caseros tienen que cumplir con una serie de disposiciones estatutarias y reglamentarias que abarcan desde la selección de los inquilinos hasta el procedimiento relativo al desahucio. Sobre esta última situación versa este pleito.

## II

El 8 de noviembre de 1983, la demandante, hoy recurrida, Mora Development Corp., presentó pleito de desahucio por falta de pago contra el matrimonio Sandín-González, residente en el condominio Highland Park. Este proyecto de vivienda recibe fondos federales bajo los auspicios del programa de renta subsidiada, Sec. 8 (42 U.S.C. sec. 1437f), en su modalidad de nueva construcción. El canon mensual bajo el contrato de arrendamiento entre las partes era de $480, de cuya suma $294 pagaba el Departamento de Desarrollo Urbano y Vivienda Federal (*Department of Housing and Urban Development*) por cuenta del arrendatario como "pago de asistencia".

En su contestación, la recurrente puso en controversia la cantidad de dinero debida y negó que hubiere violado el contrato de arrendamiento. Alegó en la afirmativa que su casero incumplió con el contrato al no computar los cánones de conformidad con las normas federales aplicables y al no efectuar el correspondiente *reajuste "interino"* en la renta luego de la recurrente haber acreditado debidamente la disminución del ingreso habido en el núcleo familiar. Finalmente, aseveró que la renta impuesta "[era] ilegal y exced[ía] el [por]ciento del ingreso familiar ajustado correspondiente". *Exhibit* C, pág. 34.

El tribunal de primera instancia celebró una vista en la que se estipularon todos los hechos fundamentales para la solución de este litigio, entre otros: (1) que la recurrida realizó una recertificación al matrimonio Sandín el 1ro de julio de 1983 que le notificaba una renta prospectiva; (2) que en esa

ocasión el demandado informó verbalmente el cese de los beneficios por desempleo; (3) que el 11 de julio de 1983 se sometió la prueba acreditativa de dicho cese; (4) que la recurrente no pagó los cánones de julio, agosto y septiembre de 1983, y (5) *que la recurrida no realizó en ningún momento el ajuste interino en la renta con motivo del cese de los beneficios por desempleo.* Luego de la consignación de la suma de dinero adeudada, se dictó la sentencia que originó este recurso.

La sentencia del ilustrado juez del Tribunal Superior se basó en razones de economía y rapidez del trámite sumario y el hecho de que la recurrente, al estipular los hechos del caso, había renunciado a presentar otras defensas. Posteriormente accedió el tribunal a quo a enmendar su sentencia a los efectos de declarar que el "[d]emandante no realizó en ningún momento la recertificación especial reajustando la renta a base del cese de los beneficios por desempleo" (*Exhibit* H, pág. 50.) y reconsideró, igualmente, un decreto previo que imponía a los demandados los honorarios de abogado.

De esta sentencia recurrió el matrimonio Sandín-González, y cuestionó la constitucionalidad del Art. 628 de la Ley de Desahucio de Puerto Rico, 32 L.P.R.A. sec. 2829, tal y como fue interpretada por el tribunal a quo, ya que, alegadamente, le privaba del "derecho de propiedad sin el debido proceso de ley".

Su señalamiento gira, esencialmente, en torno al problema de si a la luz de las disposiciones del Código de Enjuiciamiento Civil aplicables al trámite sumario de desahucio, 32 L.P.R.A. sec. 2821 *et seq.* y, específicamente, en casos de desahucios por falta de pago, puede un inquilino participante en el programa de la Sec. 8 invocar como defensa la violación por parte del casero, de su obligación de revisar y ajustar la renta. Dentro de este estrecho marco decisorio debe entenderse la opinión que hoy emitimos.

### III

█ La principal obligación del arrendatario es el pago de la renta *en la forma, modo y condiciones establecidas.* Si la obligación queda incumplida, el arrendador podrá pedir la "rescisión" del contrato y la indemnización de daños y perjuicios, o sólo esto último, y dejar el contrato subsistente. Art. 1446 del Código Civil, 31 L.P.R.A. sec. 4053. [4] Si lo que interesa el arrendador es la "rescisión", el Art. 1459 del Código Civil, 31 L.P.R.A. sec. 4066, le concede el desahucio por falta de pago. [5] Ahora bien, corresponde al arrendador hacer la elección del *procedimiento* para obtener la "rescisión" del contrato de arrendamiento, ya haciendo uso del trámite sumario de desahucio, o el más amplio del juicio ordinario. *Rossy* v. *Del Valle,* 34 D.P.R. 726, 734–736 (1925). [6] En el caso de epígrafe, el recurrido optó por el cauce sumario.

---

[4] "Si el arrendador o el arrendatario no cumplieren las obligaciones expresadas en las secciones anteriores, podrán pedir la rescisión del contrato y la indemnización de daños y perjuicios, o sólo esto último, dejando el contrato subsistente." Art. 1446 del Código Civil, 31 L.P.R.A. sec. 4053.

[5] El Art. 1459 del Código Civil identifica los motivos por los cuales el arrendador podrá desahuciar al arrendatario.

"El arrendador podrá desahuciar judicialmente al arrendatario por alguna de las causas siguientes:

"1. Haber expirado el término convencional o el que se fija para la duración de los arrendamientos en las secs. 4083 y 4092 de este título.

"2. *Falta de pago en el precio convenido.*

"3. Infracción de cualquiera de las condiciones estipuladas en el contrato.

"4. Destinar la cosa arrendada a usos o servicios no pactados que la hagan desmerecer; o no sujetarse en su uso a lo que se ordena en el número 2 de la sec. 4052 de este título." (Énfasis suplido.) 31 L.P.R.A. sec. 4066.

[6] En realidad —como señala Albaladejo— "el desahucio no es una de las formas de terminar el arrendamiento, sino un medio de recobrar judicialmente la cosa inmueble arrendada, cuando aquél se acaba por la concurrencia de ciertas causas extintivas". F. Lucas Fernández, *Comentarios al Código Civil y compilaciones forales,* Madrid, Ed. Rev. Der. Priv., 1980, T. XX, Vol. 1, pág. 470. Scaevola, por su parte, advierte que "[s]u naturaleza es un tanto ambigua . . . lo mismo se adapta a la resolución de un contrato de arrendamiento vigente como a la desposesión material del arrendatario en un arrendamiento ya extinguido". Q. M. Scaevola, *Código Civil,* Ma-

Al prescindir, por el momento, de todo el aspecto procesal que reviste la materia, resulta necesario determinar si podrá eximirse al arrendatario de pagar el precio, alegando que el arrendador no ha cumplido sus obligaciones. ¿Podrá el arrendatario suspender el pago del canon y alegar como motivo el incumplimiento del arrendador con sus obligaciones contractuales?

En principio, si el arrendador deja de cumplir alguna de sus obligaciones, el remedio para el arrendatario será, también al amparo del Art. 1446 del Código Civil, *supra*, la resolución del contrato y la indemnización de daños, o sólo esto último, dejando el contrato en vigor. No olvidemos, sin embargo, que las obligaciones derivadas del contrato de arrendamiento son bilaterales, por lo que están sometidas al principio general de que ninguna de las partes puede demandar el cumplimiento de la obligación contraria sin cumplir u ofrecer el cumplimiento de la obligación propia. En otras palabras, si el que incurre en incumplimiento exige la satisfacción de la prestación debida, la otra parte puede oponer la defensa del contrato incumplido (*exceptio non adimpleti contractus*).[7]

---

drid, Ed. Reus, 1960, T. XXIV, Vol. 1, pág. 597. Lo que ocurre es que esta acción —que según la doctrina reviste un polimorfismo sui géneris— tiene un *carácter resolutorio* del contrato. "Viene ya aquí la acción de desahucio, no como una consecuencia natural y forzosa del contrato extinguido, sino engarzada en el contrato vigente." Íd., pág. 619. En la causa de desahucio que estudiamos —falta de pago— desahucio es ante todo rescisión; después lanzamiento. Lo que hay es que la acción de desahucio lleva ínsita la acción de resolución. Íd. Véase, también, *Campos v. Trib. Superior*, 75 D.P.R. 370, 376 (1953).

[7] Esta regla, que no aparece expresamente en el Código Civil, se deduce sobre todo de sus Arts. 1077, 1053 y 1355. Véase L. Diez-Picazo, *Fundamentos del Derecho Civil Patrimonial*, Madrid, Ed. Tecnos, 1979, Vol. 1, págs. 548–552. Estos preceptos leen, en lo pertinente:

Art. 1077 (31 L.P.R.A. sec. 3052): "La facultad de resolver las obligaciones se entiende implícita en las recíprocas, para el caso de que uno de los obligados no cumpliere lo que le incumbe."

Art. 1053 (31 L.P.R.A. sec. 3017 (*in fine*)): "En las obligaciones recíprocas ninguno de los obligados incurre en mora si el otro no cumple o no

Puig Peña entiende que es preciso distinguir. Si la obligación incumplida del arrendador es *cardinal* en el contrato (cita como ejemplo, la entrega de la cosa), el arrendatario puede perfectamente suspender el pago del precio, "pues . . . actúa con plena validez la *exceptio non adimpleti contractus*". F. Puig Peña, *Compendio de Derecho Civil Español*, Pamplona, Ed. Aranzadi, 1972, T. IV, pág. 83.

Por el contrario, si el incumplimiento afecta una obligación de inferior rango (ejemplo: hacer las reparaciones) no cree que sea conveniente conceder al arrendatario dicha facultad en la mayoría de los supuestos. Íd. Véanse también: *Del Toro* v. *Blasini*, 96 D.P.R. 676, 684 (1968); J. Manresa, *Comentarios al Código Civil Español*, 6ta ed., Madrid, Ed. Reus, 1969, T. X, Vol. 2, pág. 157.

Desde el punto de vista del derecho positivo, el legislador exige que el pago del precio del arrendamiento se realice en "los términos convenidos". Art. 1445 del Código Civil, 31 L.P.R.A. sec. 4052. Esto obliga, en cada caso, al examen de las cláusulas del contrato, antes de decidir si se infringió o no esta obligación, "[d]ebiendo advertirse que esta obligación de cumplir lo pactado abarca tanto a la cuantía, como a la forma, lugar o tiempo en que el pago ha de realizarse". J. Fuentes Lojo, *Suma de Arrendamientos Urbanos*, 8va ed., Barcelona, Lib. Bosch, 1983, pág. 2229.

En el caso de autos, la familia Sandín-González arrendó una unidad de vivienda disponible bajo el programa de la Sec. 8 del *Housing and Community Development Act*. De acuerdo al esquema legal y reglamentario de este programa, el arren-

---

se allana a cumplir debidamente lo que le incumbe. Desde que uno de los obligados cumple su obligación, empieza la mora para el otro."

Art. 1355 (31 L.P.R.A. sec. 3815): "El vendedor no estará obligado a entregar la cosa vendida, si el comprador no le ha pagado el precio o no se ha señalado en el contrato un plazo para el pago."

datario se compromete a pagar una renta reducida o inferior a la renta de mercado.

Al recibir los fondos bajo la Sec. 8, los arrendadores se comprometen a realizar certificaciones anuales para verificar la composición familiar y los ingresos de cada inquilino participante. También se obligan a realizar certificaciones especiales para reajustar la renta cuando la familia sufre disminución de ingresos en el período entre las recertificaciones anuales ordinarias. Véase 24 C.F.R. sec. 880.603(c)(2) (1987).

■ El propósito de estas disposiciones es proveer un mecanismo de revisión periódica de rentas que asegure que los inquilinos paguen un canon de arrendamiento proporcional a sus ingresos reales a través de todo el contrato. También se le asegura al casero, mediante el mecanismo de revisión, que la agencia federal modificará sus pagos supletorios cuando un cambio en la situación personal del inquilino lo amerite. 24 C.F.R., *supra*. Este sencillo diseño le garantiza al casero, de ser diligente en el trámite de revisión, un aumento del pago de asistencia, efectivo tan pronto el inquilino notifica un cambio en sus ingresos o en la composición familiar, etc. 24 C.F.R. sec. 880.603(c)(1) (1987); 24 C.F.R. sec. 813.109 (1987). Como se dijo en *Swann v. Gastonia Housing Authority*, 502 F. Supp. 362, 365 (1980):

> El casero participante en el programa de Sección 8 obtiene numerosos beneficios de su participación en el programa. El riesgo mensual de no recibir la renta del inquilino se reduce porque la Autoridad de Vivienda paga la mayor parte de la renta y el inquilino sólo paga una cantidad de acuerdo a sus recursos. (Traducción nuestra.)

■ A poco que examinamos la naturaleza del pacto de revisión de rentas, que en el contrato en controversia persigue la acomodación del canon a las fluctuaciones de las circunstancias, nos damos cuenta de que nos encontramos ante un género

de prestación cuyo incumplimiento por parte del arrendador activa, con toda su fuerza, la defensa de obligación no cumplida. Dicho incumplimiento afecta un *elemento esencial* del contrato: el control de la renta a tenor con la filosofía federal de proveer viviendas de alquiler adecuadas a inquilinos de bajos ingresos.

El objeto de la prestación arrendaticia, es decir la cuantía de la renta, ha de ser determinada, pero esto no quiere decir que deba ser fija; lo importante es que sea determinable. [8] Según el Art. 1225 del Código Civil, 31 L.P.R.A. sec. 3423, la indeterminación en la cantidad no será obstáculo para la existencia del contrato, siempre que sea posible determinarla sin necesidad de nuevo convenio entre los contratantes. Esto es lo que ocurre con el pacto de revisión de rentas que ahora nos ocupa. Su mecanismo consiste en concretar inicialmente una cuantía, para someterla posteriormente a su revisión o determinabilidad, a base del índice que ofrecen los cambios en el ingreso y composición familiar.

El procedimiento operativo que se ajusta más a la finalidad estabilizadora de la cláusula de revisión, nos obliga a exigirle al casero un fiel cumplimiento con el procedimiento de ajuste anual e interino. Nótese que una negativa infundada del casero a realizar el reajuste en las rentas, obliga a la familia a pagar un alquiler que no puede solventar por imposibilidad económica, lo que conduce al atraso en el pago y la posible acción de desahucio. Esto se puede prestar a desahucios arbitrarios, desenlace que derrota el fin principalísimo de este programa de viviendas de alquiler.

Resolvemos, pues, que al incumplir un casero participante en el programa de la Sec. 8, con su obligación de estabilizar la renta por mandato legal, reglamentario y contractual,

---

[8] Véase, a modo de ejemplo, *Morales* v. *Álvarez*, 63 D.P.R. 208 (1944).

está impedido de reclamar la resolución del contrato de arrendamiento en aquellas situaciones en que el inquilino haya cumplido cabalmente con su deber de informar un cambio en la situación económica o familiar. Si resolviéramos lo contrario, estaríamos sancionando una solución reñida con la propia lógica del contrato y entregando el procedimiento de revisión a la pura discreción y beneficio del arrendador. *Greenwich Gardens Associates* v. *Pitt*, 484 N.Y.S.2d 439, 443 (1984); Nota, C. Bello, *Substantive Issues Relative to Rent Levels and Termination of Benefits Under United States Housing Act of 1937 (42 U.S.C. sec. 1437 et seq.)*, 77 A.L.R. Fed. 884, 902 (1986).

Resuelta esta primera cuestión sustantiva, nos resta examinar si en el *juicio sumario de desahucio por falta de pago* el inquilino puede presentar las defensas relativas a la indeterminación del alquiler y renta ilegal.

## IV

El Art. 628 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 2829, párrafo primero, establece a primera vista una rigurosa limitación probatoria cuando se trata de un desahucio por falta de pago del precio estipulado. Este precepto dispone lo siguiente:

*Sec. 2829. Prueba en el recurso por falta de pago*

Cuando la demanda se funde en falta de pago del canon o precio convenido en un contrato, no se admitirá al demandado otra prueba que la del recibo o cualquier otro documento en que conste haberse el pago verificado.

Las pruebas de ambas partes comprenderán los hechos fundamentales de la cuestión principal.

Este Tribunal se enfrentó por primera vez al problema de las pruebas que son pertinentes en el juicio de desahucio por falta de pago en *Más et al.* v. *Borinquen Sugar Co.*, 18 D.P.R. 304 (1912). La decisión revela que ya desde principio de siglo hicimos un esfuerzo por lograr una interpretación congruente

y compatible con el mantenimiento de la constitucionalidad del antiguo Art. 9 de la Ley de Desahucio de 1905, predecesor del actual Art. 628 del Código de Enjuiciamiento Civil.

Interpretamos en aquella ocasión que las palabras de dicho Art. 9, hoy Art. 628, se limitaban solamente a los casos en que el demandado combatía el hecho relativo a la falta de pago y *fundaba su defensa en el hecho del pago*. Expresamos, como fundamento racional de esta norma, que de otra forma a nada conduciría tratar de probar el pago si la defensa fuera, por ejemplo, que el canon estipulado no estaba vencido, o que existía un *estoppel*. Resolvimos, en suma, que si el arrendatario podía probar que no había infringido su contrato, o que el arrendador estaba impedido por sus propios actos de alegar el incumplimiento del mismo, no procedía, por tanto, la acción de desahucio. "Para probar que la acción no procede debe el arrendatario si su prueba no se funda en el pago, estar en condiciones de poder presentar sus otras pruebas, y deberá ser oído en juicio." *Más et al.* v. *Borinquen Sugar Co.*, supra, pág. 314.

En *Más et al.* v. *Borinquen Sugar Co.*, supra, tuvimos en cuenta los pronunciamientos del Tribunal Supremo español sobre el contenido y ámbito del juicio sumario de desahucio por falta de pago. Citamos con aprobación la doctrina jurisprudencial que permitía la presentación de otra prueba cuando la defensa no era la de haberse verificado el pago. También dijimos que la presunción era de que nuestra Legislatura había tenido la intención de adoptar aquí la ley con la interpretación dada por el Tribunal Supremo español.

Un examen de la doctrina consagrada en torno al Art. 1579 de la Ley de Enjuiciamiento Civil española, norma concordante en lo pertinente y fuente de nuestro actual Art. 628, demuestra que el criterio de defensas limitadas, tal y como dijimos en *Más et al.* v. *Borinquen Sugar Co.*, supra, nunca tuvo

a los ojos del juez un carácter absoluto. (⁹) El procesalista español Prieto-Castro se ha referido recientemente a la limitación como "innecesaria e imprudente y que puede ser injusta en muchos casos". *Tratado de Derecho Procesal Civil*, 2da ed., Pamplona, Ed. Aranzadi, 1985, T. II, pág. 50.

Por ejemplo, en ausencia de un *precio cierto y determinado* que pueda servir de apoyo a la acción de desahucio, ésta no procede. (Sentencias de 19 de junio de 1944 y 14 de mayo de 1955 del Tribunal Supremo español.) F. Lucas Fernández, *Comentarios al Código Civil y compilaciones forales*, Madrid, Ed. Rev. Der. Priv., 1980, T. XX, Vol. 1, pág. 478.

Manresa sostiene una opinión parecida en ocasión de comentar la sentencia de 25 de noviembre de 1940: ". . . [C]uando el desahucio se promueve por falta de pago, *ha de partir de la existencia de un precio cierto y determinado que resulte, de modo claro de las cláusulas del contrato de arrendamiento, lo que no sucede cuando las partes discrepan acerca de la cuantía de la condonación o rebaja que deba descontarse del precio convenido, en atención a los hechos acaecidos y preceptos legales que estiman referentes al caso, tema que habrá de ser resuelto en el juicio declarativo correspondiente.*" (Énfasis suplido.) Manresa, *op. cit.*, T. X (2), pág. 260.

La doctrina y jurisprudencia española también permiten, en casos de desahucios por falta de pago, la presentación de reconvenciones y defensas que se relacionen *íntimamente* con las causas desahuciales alegadas como base del juicio, en este caso, la obligación de pago. C. Vázquez Iruzubieta, *Doctrina y*

---

(⁹) En una ocasión el legislador puertorriqueño quiso moderar el rigor del Art. 628 mediante una enmienda provisional de emergencia. (Ley Núm. 9 de 17 de noviembre de 1941, según enmendada.) Mediante este mecanismo de control de alquileres, se puso a disposición del inquilino la defensa de alquiler irrazonable. Dicha enmienda estuvo en vigor hasta tan sólo seis meses después del cese de las hostilidades de guerra entre Estados Unidos de América, Alemania, Italia y Japón, fecha en que expiró por sus propios términos. Véase *Igartúa* v. *Ruiz*, 73 D.P.R. 354, 360 (1952).

*Jurisprudencia de la Ley de Enjuiciamiento Civil*, Madrid, Ed. Rev. Der. Priv., 1983, pág. 1847.

Después del caso de *Más et al.* v. *Borinquen Sugar Co.*, supra, no habíamos tenido ocasión de enfrentarnos nuevamente de lleno al tema de las limitaciones de defensas en los juicios de desahucio por falta de pago. [10] Sin embargo, nuestros pronunciamientos más recientes revelan que en Puerto Rico, aunque siempre hemos concebido el juicio de desahucio como un remedio legal de carácter restitutorio de la posesión y generador de un procedimiento sumario, *Fernández & Hno.* v. *Pérez*, 79 D.P.R. 244 (1956), en ocasiones, y en casos apropiados, hemos permitido la presentación de ciertas defensas que no desnaturalicen su espíritu. Así, en *Marín* v. *Montijo*, 109 D.P.R. 268, 277–278 (1979), por ejemplo, permitimos que un inquilino que efectuó reparaciones necesarias mediando la anuencia del arrendador, hiciera valer, en juicio de desahucio, su derecho a la "retención" y a no abandonar la propiedad donde hizo las reparaciones, hasta tanto no se le reembolsaran sus gastos. Estimamos que no debía menoscabarse el derecho del arrendatario en estas circunstancias, "por el solo hecho de

---

[10] En *Brunet* v. *Corte*, 45 D.P.R. 901 (1933), resolvimos que el antiguo Art. 9 de la Ley de Desahucio de 1905 no era aplicable a un desahucio por falta de pago en el cual los demandados negaban la existencia del contrato de arrendamiento y por el contrario afirmaban que venían poseyendo los bienes en controversia en virtud de título. Dijimos:

". . . Como se ve, los demandados alegan el título en virtud del cual están poseyendo la propiedad, y no debe discutírseles el derecho de sostener esta alegación y probar que su posesión no se basa en contrato alguno, sino en el título por ellos alegado. *Claro es que los derechos del demandante no deben estar a merced de una alegación de título que no esté sostenida por la prueba; pero si después de aportada toda la evidencia se establece prima facie, real y efectivamente un conflicto de título, este conflicto debe dilucidarse en el juicio declarativo correspondiente y no en el procedimiento especial, rápido y sumario de la acción de desahucio.*" (Énfasis suplido.) *Brunet* v. *Corte*, supra, pág. 903.

que la acción elegida por el arrendador en cierto caso [fuera] el desahucio y no la accesión u otra acción ordinaria". *Marín* v. *Montijo*, supra. Aclaramos, sin embargo, que correspondía al demandado, más que alegar, demostrar satisfactoriamente el mérito de su reclamo y que sin causar dilaciones en el proceso debía, en el momento oportuno, presentar prueba que llevara al ánimo del juzgador una razonable certeza de los méritos de la defensa. *Marín* v. *Montijo*, supra.

■ Examinados los antecedentes expuestos, resolvemos que un inquilino participante en el programa de subsidios en controversia, puede presentar, cuando sea demandado en juicio de desahucio por falta de pago, la defensa de incumplimiento del arrendador con su deber de ajustar la renta. Corresponde al demandado demostrar satisfactoriamente este hecho y establecer prima facie los méritos de la defensa sin ocasionar dilaciones innecesarias. *Brunet* v. *Corte*, 45 D.P.R. 901, 903 (1933) ; *Marín* v. *Montijo*, supra, pág. 278.

■ En el caso de autos, la falta de cumplimiento del arrendador con su deber de revisar la renta, guarda una relación *directa y precisa* con la determinación del alquiler. Ello desnaturaliza, obviamente, la cuantía del canon que sirve de base a la demanda, cuestión que está *íntimamente relacionada* con la obligación de pago. Fuentes Lojo, *op. cit.*, pág. 2335. Por otra parte, el incumplimiento del arrendador conlleva la creación de una situación anormal de arrendamiento sin precio cierto que pueda servir de base a la acción de desahucio. Lucas Fernández, *op. cit.*, pág. 478; Manresa, *op. cit.*, pág. 260; *Housing Authority of City of Passaic* v. *Torres*, 362 A.2d 1254 (1976).

■ No existe controversia sobre el hecho de que la recurrida no realizó el ajuste interino al que alude, no sólo la reglamentación federal, sino el propio contrato de arrendamien-

to. (¹¹) Este hecho fue estipulado y obra como una determinación del foro primario.

La recurrida aceptó esta situación, pero expresó que "no es menos cierto que cualquier cantidad que los demandados entendían les correspondía pagar debieron haberla puesto a la disposición de la demandante". El argumento es inmeritorio. El reglamento es claro al imponerle al casero el deber de practicar el reexamen. (¹²) La obligación primaria recaía en su persona una vez acreditado el cambio en el ingreso familiar. No puede escudarse en el incumplimiento de la recurrente cuando ella incumplió, a su vez, con los claros términos del reglamento. Además, el propio contrato establece que "[c]ualquiera de estos cambios (se refiere a cambios en la renta) *será efectivo a la fecha que establezca el arrendador en la notificación que enviará al arrendatario*".

Como vemos, después de acogerse al procedimiento de reunirse con los inquilinos, el casero debió notificar a aquéllos el cambio de la renta, que sólo era efectiva con la notificación. No puede imponerse al inquilino la obligación —en abierta violación al reglamento— de llevar a cabo un ajuste unilateral de la renta, tenga o no el conocimiento para hacerlo, y enviar por su cuenta el canon que él "entienda" que le corresponde pagar. Esto implicaría entregar al azar un aspecto tan im-

---

(¹¹) Aunque nada dispusiera el contrato, sería de aplicación el principio que establece que cuando los contratantes pactan sobre una materia regulada por ley, las disposiciones estatutarias se entienden incorporadas desde un principio al contrato. *E.L.A.* v. *Great Amer. Ins. Co.*, 106 D.P.R. 825 (1977).

(¹²) "(2) *Reevaluaciones interinas.* La familia debe cumplir con las disposiciones de su contrato de arrendamiento en cuanto a informar los cambios en el ingreso. Si el Propietario recibe información de que ha ocurrido un cambio en el ingreso familiar o en otras circunstancias en el intervalo entre dos reevaluaciones programadas, *debe consultar con la familia y hacer los ajustes que se estimen necesarios.* Deberán verificarse cualesquiera cambios en el ingreso familiar o en otras circunstancias que puedan tener como resultado un ajuste en el Pago Total del Inquilino, la Renta del Inquilino y el Pago de Asistencia de Vivienda." (Énfasis y traducción nuestra.) 24 C.F.R. sec. 880.603(c)(2) (1987).

portante del programa y promover la creación de múltiples controversias. Nota, *Substantive Issues Relative to Rent Levels and Termination of Benefits Under United States Housing Act of 1937 (42 U.S.C. sec. 1437 et seq.)*, supra.

■ La sentencia del Tribunal Superior se basó, en parte, en el hecho de que la recurrente había renunciado a la presentación de otra evidencia al estipular los hechos del caso. Sin embargo, precisamente, la estipulación de un hecho *sustituye la prueba que hubiera sido presentada en la vista del caso. Vda. de Rivera* v. *Pueblo Supermarkets*, 102 D.P.R. 134, 139 (1974). Véase, también, *Lebrón Velázquez* v. *Romero Barceló*, 101 D.P.R. 915, 922 (1974) (cuando se ha estipulado un hecho, la otra parte queda relevada de probarlo).

■ Por no existir controversia en torno al hecho de que la recurrida no cumplió con su responsabilidad de realizar el ajuste interino, el cual en este género de contratos reviste importancia cardinal, procede resolver que la falta de pago obedeció a la culpa del propio arrendador. Por lo tanto, no procede la resolución del arrendamiento por falta de pago ni, por consiguiente, el desahucio. Fuentes Lojo, *op. cit.*, T. II, pág. 2281.

■ El reconocimiento que hacemos hoy no introduce un elemento que imposibilite al arrendador el ejercicio de su derecho a desahuciar a un inquilino moroso. Tan sólo resolvemos que en situaciones como la presente, si el arrendador pretende iniciar una acción sumaria de desahucio por falta de pago, dentro de los estrechos moldes del procedimiento, debe cumplir cabalmente con su obligación de practicar el ajuste anual e interino, so pena de ver enervada la acción ante la defensa de ilegalidad e indeterminación de la renta, con la consiguiente remisión del asunto al trámite ordinario o juicio declarativo.

Consideraciones que no se dan en otras situaciones de desahucios corrientes, requieren que demos una interpretación más amplia al conjunto de defensas oponibles al casero por un inquilino bajo el programa de la Sec. 8. Ahora bien, en modo alguno debe entenderse que esta decisión constituye un rechazo de toda nuestra jurisprudencia que, por razones de economía procesal, limita el ámbito de las cuestiones a ser dirimidas en las acciones sumarias de desahucio.

Por los antedichos fundamentos, *la sentencia del Tribunal Superior será revocada.*

El Juez Asociado Señor Rebollo López disiente sin opinión escrita. El Juez Asociado Señor Ortiz se inhibió.