# 2009 DTA 78

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE BAYAMÓN**
**PANEL ESPECIAL**

CORAL CORPORATION D/B/A PLAZA DEL MAR SHOPPING CENTER
Demandantes-Apelantes

v.

ZENAIDA LEÓN PÉREZ H/N/C STONE BITS; STONE BITS; FULANO DE TAL
Demandados-Apelados

Núm. KLAN-08-01476

San Juan, Puerto Rico, a 13 de mayo de 2009

Panel integrado por su Presidenta, la Juez Pesante Martínez,
y los Jueces Arbona Lago y Miranda De Hostos

Pesante Martínez, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Comparece ante nos, Coral Corporation (apelante), entidad que opera el centro comercial Plaza del Mar Shopping Center, y mediante apelación nos solicita que revisemos una Sentencia de 10 de julio de 2008, notificada el 24 de julio de 2008, que emitió el Hon. Ángel R. Pagán Ocasio, Juez del Tribunal de Primera Instancia, Sala de Bayamón (TPI). Mediante el referido dictamen, se declaró no ha lugar la reclamación de cobro de dinero que presentó el apelante contra Zenaida León Pérez y cierta corporación que preside esta última, Stone Bits (apeladas). Más aún, con el dictamen se favoreció la reconvención que presentaron las apeladas contra el apelante, y de esta forma, se les concedió el pago de $25,000 como compensación por daños contractuales, y además, $20,000 a favor de Zenaida León Pérez por la frustración y agonía que experimentó a consecuencia del incumplimiento contractual del apelante.

Inconforme con el dictamen, el apelante acudió ante nos y, en síntesis, señaló que erró el TPI en su apreciación de la prueba y la adjudicación de credibilidad. Cuestionó que no se hubiera determinado que las apeladas incumplieron con el contrato de arrendamiento, alegadamente, al haber dejado de pagar los cánones de arrendamiento, lo cual, le daba derecho a la resolución del contrato y a que se le pagara el monto de cánones adeudados. Además, adujo que erró el TPI al haber acogido la reconvención de las apeladas y haberle concedido una partida de daños a Zenaida León Pérez, en su carácter personal, ya que ésta, alegadamente, no figuró como

parte en la reconvención que se declaró con lugar. Más bien, adujo el apelante que ésta compareció como presidenta de Stone Bits. Agregó que aun cuando se entendiera que aquélla debía tenerse como parte reconviniente, no desfiló prueba de daños. De hecho, también indicó que Stone Bits no presentó prueba de daños por alegado incumplimiento de contrato.

Más aún, el apelante cuestionó que se hubiera determinado como un hecho que éste interrumpió la posesión y disfrute pacífico de un local comercial que fue objeto del contrato de arrendamiento que otorgó con los apelados. Consiguientemente, se opuso a que se concluyera que tal actuación constituyó un incumplimiento a sus obligaciones como arrendador. Entre otros asuntos, el apelante no estuvo de acuerdo conque el TPI determinara como un hecho que el contrato de arrendamiento en controversia fuera considerado como uno de adhesión. También, que se entendiera demostrado que las apeladas tuvieron que solicitar líneas de crédito y préstamos para salvar su situación por los problemas que enfrentaron con el apelante respecto al contrato de arrendamiento en controversia.

Examinamos la prueba documental aportada por el apelante y la transcripción de la prueba oral vertida ante el TPI. Adelantamos que confirmamos el dictamen apelado.

## I

Esbozamos a continuación una breve relación de los hechos e incidencias procesales más relevantes de este caso.

El 29 de diciembre de 2005, el apelante suscribió un contrato de arrendamiento de un local ubicado en el centro comercial Plaza del Mar Shopping Center con la Sra. Zenaida León Pérez, haciendo negocios como Stone Bits Co. En noviembre de 2006, el apelante presentó una demanda tanto en contra de Zenaida León Pérez como de Stone Bits (las apeladas). Alegó que las apeladas le adeudaban los cánones de arrendamiento correspondientes a los meses de agosto, septiembre, octubre y noviembre de 2006. Indicó que a pesar del incumplimiento contractual que ello implicaba por parte de las apeladas, éstas continuaban poseyendo en precario el local. Pidió, entonces, que se proveyera para la rescisión del contrato, el pago de los cánones devengados y no pagados, las penalidades e intereses convenidos contractualmente en caso de incumplimiento, costas y honorarios de abogados, más el desalojo y lanzamiento de las apeladas.

Las apeladas contestaron la demanda. Destacaron al comienzo del escrito que comparecía tanto Zenaida León Pérez como Stone Bits. Se indicó que la primera operaba bajo la figura de la corporación registrada como Stone Bits y que fungía como su presidenta. Reconoció que otorgó el referido contrato de arrendamiento de un local comercial con el apelante. Más, opusieron como defensa que en agosto de 2006, el apelante interrumpió su posesión pacífica y continua del local tras cerrarlo con cadena y candado. Cuestionaron que se le exigiera cumplir con la obligación de pago de canon de arrendamiento de un local respecto al cual no tenía libre posesión.

Agréguese que, junto con la contestación, se presentó una reconvención. En el primer párrafo se indicó que figuraba como reconviniente, Stone Bits, representada por su presidenta Zenaida León Pérez. Se adujo que para poder operar su negocio en el local arrendado, se hizo una inversión de $40,000 para habilitar el espacio, ya que el local no contaba con pisos, paredes divisorias, instalaciones eléctricas, conductos o equipo de aire acondicionado, muebles o pintura.

Se agregó que al momento en que se suscribió el contrato de arrendamiento, el apelante no contaba con el permiso de uso de la Administración de Reglamentos y Permisos (ARPE). Adujo que no fue sino hasta abril de 2006 que el apelante consiguió la aprobación de ese permiso para el centro comercial, y hasta entonces, no se pudo gestionar el permiso de uso del local alquilado. Se mencionó que se les exigió el pago de los cánones aun cuando no se podía operar el negocio por no contar el centro comercial con el permiso de uso.

Por otro lado, se alegó que mediaron distintos acuerdos y contratos entre las partes. Se adujo en la reconvención que el apelante incumplió con honrar ciertos acuerdos sobre el horario que pretendía operar el negocio Stone Bits, y además, sobre el pago de cuota de mantenimiento entre otros asuntos. Se mencionó que desde mayo de 2006, ante los alegados problemas en cuanto a la negociación de los términos contractuales, y el reclamo para que se cumplieran los acuerdos, incluso el apelante les indicó que no abrieran el negocio y que les ofrecía pagar por las mejoras que costearon las apeladas.

También se trajo a colación que el apelante promovió que las apeladas buscaran comprador de las mejoras. Por otro lado, adujeron que el mismo apelante se encargó de obstaculizar los prospectivos compradores y arrendatarios que sugerían las apeladas. Se reiteró que, en agosto de 2006, el apelante instaló una cadena en la puerta principal del local arrendado. Según se alegó, no se tenía acceso al local. Por tal razón, se solicitó la remoción de las cadenas o candados en la reconvención, y además, se reclamó haber sufrido daños económicos y angustias mentales por no poder disfrutar del negocio, y ello, por incumplimiento de contrato y actos torticeros imputables al apelante. Finalmente, se solicitó que se declarara sin lugar el desahucio, que se tramitara el caso por la vía ordinaria y se declarara con lugar la reconvención.

El TPI acogió la solicitud para que el caso se tramitara por la vía ordinaria. También, se negó a desestimar la reconvención como lo había solicitado el apelante. Inconforme con ese dictamen, el apelante acudió ante nos en solicitud de revisión. En esa ocasión, en el caso KLCE-2007-00359, avalamos las determinaciones del TPI. Destacamos que el fin de una acción de desahucio era recuperar la posesión de una propiedad inmueble, y en este caso, **el apelante había recuperado la posesión del local cuando para agosto de 2006 le puso cadena y candado a la puerta principal del mismo.**

El caso se devolvió al TPI. Más tarde, en marzo de 2007, el referido foro dictó una sentencia parcial por la que desestimó la causa de acción de desahucio que instó el apelante. Tomó cuenta de que las apeladas le entregaron al apelante la llave del local. Finalmente, en julio de 2008, el TPI atendió las causas de acción que quedaban pendientes de resolución, a saber, la reclamación de cobro de dinero del apelante y la reconvención de Stone Bits y Zenaida León Pérez.

Basándose en la prueba documental y oral que se desfiló, el TPI determinó como hechos probados lo siguiente. El apelante y Zenaida León Pérez, haciendo negocios como Stone Bits, llegaron a ciertos acuerdos verbales y escritos relacionados al arrendamiento de un local dentro del centro comercial que opera el primero. Zenaida León Pérez le indicó el interés que tenía de conseguir un local en el que pudiera pagar determinada mensualidad y cuota de mantenimiento. Particularmente, le expresó su interés de que se le permitiera operar su negocio dentro de un horario regular de 9:00 a.m. a 6:00 p.m. Esto último, ya que no tendría presupuesto para pagar distintos turnos de trabajo a empleados que necesitara contratar. Zenaida también le expresó al apelante el interés de tener exclusividad sobre la venta de determinados productos dentro del centro comercial. El apelante le hizo la representación a Zenaida León de que podría ajustar el contrato a sus necesidades. De hecho, llegaron a unos acuerdos que se redujeron a escrito en agosto de 2005.

Confiando en que el contrato se ceñiría a lo acordado, Zenaida León pagó una fianza y comenzó a invertir para habilitar el local. Se destacó que incluso se sirvió del personal que el apelante le recomendó (arquitecto e ingeniero). No obstante lo anterior, en diciembre de 2005, el apelante le presentó a Zenaida un documento de unas 40 páginas, en inglés, y que alegadamente sería el contrato formal de arrendamiento. El contenido de este documento refería a acuerdos distintos a los previamente pactados. Se determinó como un hecho probado que Zenaida no intervino en la redacción del documento y que el apelante varió unilateralmente los acuerdos previamente pactados. El TPI determinó que este contrato era uno de adhesión.

Según la prueba desfilada, ya para enero de 2006, concluyeron las obras de construcción en el local que arrendó Zenaida y Stone Bits. No obstante, no pudo comenzar operaciones, ya que el centro comercial carecía

de permiso de uso. De acuerdo a sus declaraciones, se le informó en ARPE que para ella poder obtener el permiso de uso de su local, requería acreditar que el centro comercial tenía el correspondiente permiso de uso. Ésta declaró sobre cómo el presidente de la corporación apelante le insistió que comenzara a operar su negocio.

Además, el apelante exigió el pago de los cánones de arrendamiento correspondientes a los meses en que el centro comercial no tenía aún su permiso de uso. El apelante obtuvo su permiso de uso a finales de abril de 2006 y en mayo de 2006 fue que las apeladas, Zenaida y Stone Bits, lograron entonces obtener el suyo. No obstante, a exigencias del apelante, las apeladas pagaron los cánones de febrero, marzo, abril y mayo.

En mayo de 2006 volvió a darse un incidente en cuanto a los términos contractuales. El apelante le comunicó a Zenaida que no podía honrarle lo pactado en cuanto a los horarios de operación del negocio, lo relacionado a la exclusividad y la cuota de mantenimiento. Zenaida le llamó la atención sobre el hecho de que desde el principio de las negociaciones le hizo saber que no tendría capacidad económica para extender el horario. De hecho, ésta declaró que una de las razones que la motivó a alquilar ese local fue que se le permitiera trabajar sólo en el horario regular, distinto a como ocurriría en otros centro comerciales. El asunto fue objeto de cambios adicionales a las relaciones contractuales entre las partes.

Finalmente, aunque se alteraron los acuerdos originales, Zenaida, como representante de Stone Bits, firmó uno de los proyectos de contrato con los nuevos términos. Al increpársele sobre el particular, declaró que se vio obligada a firmar por temor a perder la inversión que había hecho hasta el momento para operar su negocio. Según indicó, ya había invertido cerca de $40,000. Ésta tuvo conversaciones adicionales con el representante del apelante sobre cómo no podría cumplir con los términos del contrato, particularmente con lo del horario. Se estimó probado que el apelante, entonces, le indicó que le pagaría por las mejoras que aquélla costeó. También se comentó que le instruyó a que consiguiera prospectivos compradores de las mejoras a quienes se les pudiera alquilar el local.

Se estimó probado que el apelante entorpeció el trámite de las apeladas para conseguir compradores. Se destacó el hecho de que éste tapó en varias ocasiones un letrero de venta que Zenaida instaló en la puerta del local. Desaprobó, además, los conceptos o los prospectivos inquilinos que mostraron interés en alquilar el local y pagarle a Zenaida y Stone Bits por la inversión de las mejoras.

Finalmente, Zenaida le informó al representante del apelante que no abriría la tienda. En agosto de 2006, el apelante cerró con cadena la puerta del local. En noviembre de 2006, instó la demanda de desahucio y cobro de dinero de los cánones devengados y no pagados desde agosto de 2006. Por otro lado, las apeladas ya habían invertido en mercancía y tuvieron que solicitar préstamos y líneas de crédito para alquilar otro local para poder vender la mercancía.

Valga agregar que en su razonamiento, el TPI destacó que en el Artículo 16 del contrato de arrendamiento que suscribieron las partes involucradas en este pleito, se convino:

"Landlord covenants that tenant, upon paying all rent and performing all covenants and agreements on its part to be performed, shall have quiet enjoyment and possession of the leased premises during the term, subject to the terms and conditions of this lease and to any agreements to which this lease is or may become subordinate."

Tomando en cuenta lo anterior, advirtió el TPI que de la prueba surgió que a principios de agosto, el apelante instaló un cadena (o candado) en la entrada del local objeto de la acción de desahucio. Con tal actuación, dispuso el referido foro, las apeladas no podían tener "quiet enjoyment y posesión of the leased premises". Entonces, el TPI invocó ciertos principios de derecho aplicable para concluir que si el apelante quería cobrar los cánones de arrendamiento alegadamente devengados y no pagados, debió permitirle a las

apeladas el libre disfrute y goce pacífico de la cosa arrendada de acuerdo al contrato que suscribieron. En vista de que aquél incumplió con su obligación como arrendador de mantener al arrendatario en el goce pacífico del lugar arrendado, declaró no ha lugar la demanda en cobro de dinero.

Basándonos en lo anterior, discutimos el derecho aplicable.

## II

Las obligaciones derivadas de un contrato de arrendamiento son bilaterales, por lo que están sometidas al principio general de que ninguna de las partes puede exigir el cumplimiento de la obligación contraria sin cumplir u ofrecer el cumplimiento de la obligación propia. *Mora Dev. Corp. v. Sandín*, 118 D.P.R. 733, 742 (1987). En otras palabras, si el que incurre en incumplimiento exige la satisfacción de la prestación debida, la otra parte puede oponer la defensa del contrato incumplido (*exceptio non adimpleti contractus*). *Id.*

A estos efectos, conviene indicar que la principal obligación de un arrendatario es el pago de la renta en la forma, modo y condiciones establecidas en el contrato de arrendamiento. Art. 1445 del Código Civil, 31 L.P.R. A. § 4052. Si esta obligación queda incumplida, el arrendador podrá pedir la **rescisión del contrato y la indemnización de daños y perjuicios**, o sólo esto último, y dejar el contrato subsistente. Art. 1446 del Código Civil, 31 L.P.R.A. sec. 4053; *Mora Dev. Corp. v. Sandín, supra*, pág. 741. Por otra parte, el arrendador viene obligado, entre otras cosas, a entregarle al arrendatario la cosa objeto del contrato y mantener al arrendatario en el goce pacífico del arrendamiento por todo el término del contrato. Art. 1444 del Código Civil, 31 L.P.R.A. §4051.

En caso de que sea el arrendador quien incumpla alguna de sus obligaciones, el remedio para el arrendatario será, también, al amparo del Artículo 1446 del Código Civil, la resolución del contrato y la indemnización de daños, o sólo esto último, dejando el contrato en vigor. Más aún, tomando en cuenta a los tratadistas, se ha expresado que el arrendatario **podría suspender el pago del precio** si la obligación incumplida por el arrendador es cardinal en el contrato, pues actúa con plena validez la norma *exceptio non adimpleti contractus*. *Mora Dev. Corp. v. Sandín, supra*, páginas 742-743.

Tomando en cuenta lo anterior, concluimos lo siguiente.

## III

En este caso, la controversia de umbral atendida fue la procedencia de la reclamación en cobro de dinero del apelante. Sobre el particular conviene destacar que éste junto con Zenaida León Pérez, haciendo negocios como Stone Bits, suscribió un contrato de arrendamiento por escrito. Aun abstrayéndonos de los controvertidos cambios unilaterales de los términos del contrato por parte del apelante, la alegada inexistencia de acuerdos verbales, o las motivaciones que alegadamente forzaron a Zenaida León a firmar finalmente uno o los contratos cuyos términos le eran desfavorables, el hecho básico y relevante es que las partes contrajeron ciertas obligaciones bilaterales en virtud de un contrato de arrendamiento cuya existencia fue acreditada mediante prueba documental y oral durante el juicio.

Por motivo del o los contratos de arrendamiento que otorgaron las partes, el apelante quedaba obligado a garantizarle a Zenaida o Stone Bits el goce pacífico del local arrendado por todo el término del contrato. A cambio, las últimas debían satisfacer el pago del canon de arrendamiento pactado. Precisamente, basándose en la existencia de tal contrato, fue que el apelante presentó su reclamación. Este planteó que las apeladas, Zenaida o Stone Bits, incumplieron la obligación de pago que contrajeron al suscribir el referido contrato. Esto, a su entender, le permitía solicitar la rescisión del contrato, el pago de lo adeudado, el desalojo del local y la indemnización de otras penalidades.

Ahora bien, quedó probado que en agosto de 2006, el apelante privó a las apeladas del disfrute pacífico del

local. Lo anterior, tras instalar una cadena a la puerta del local objeto del contrato del arrendamiento, sin que proveyera a Zenaida los medios para abrir la cadena o candado. Distinto a como sugiere el apelante, y aún sin tomar en cuenta la prueba que se desfiló y sirvió de base para el dictamen apelado, ese hecho ya fue adjudicado previamente en este caso. Ese asunto formó parte del dictamen que emitimos en el caso KLCE-2007-00359. En ese caso determinamos que el apelante había recuperado la posesión del local con la referida actuación.

Siendo ello así, concluimos que con su actuación, el apelante incumplió con una de las obligaciones principales que le impone la ley como arrendador. Con su actuación, disponemos, abdicó a su derecho a reclamarle a las apeladas el cumplimiento de pago del canon de arrendamiento desde agosto de 2006. Por otro lado, y contrario a como ha planteado, su actuación permitía a las apeladas a dejar de pagar los cánones de arrendamiento, a solicitar la rescisión del contrato y a pedir una indemnización por daños y perjuicios.

Estos remedios fueron precisamente los que se solicitaron en la reconvención objeto de este pleito, y de hecho, fueron los que correctamente se concedieron. Además, estamos convencidos de que, también correctamente, se le negó al apelante su reclamación de cobro de dinero. La jurisprudencia y las disposiciones de derecho que discutimos apoyan la determinación del TPI.

Por otro lado, el otro asunto relevante planteado ante nos, remite al alegado error del TPI en conceder una partida para compensar a Zenaida por angustias mentales, esta suma, distinta de la concedida a Stone Bits. Se alegó que fue Stone Bits, y no Zenaida, quien figuró como parte reconviniente.

Sobre este particular destacamos que desde el inicio del pleito, se incluyeron tanto alegaciones como reclamaciones en contra y a favor de una y otra persona. La demanda se presentó tanto contra Stone Bits como Zenaida. La demanda se contestó a nombre de una y otra persona. En cuanto a la reconvención, es cierto que en el primer párrafo se identificó como parte reconviniente a Stone Bits. No obstante, se incluyó la reclamación de los daños del ente jurídico como del ente natural referido. En particular, en el penúltimo párrafo de la reconvención, se incluyó una reclamación de daños contractuales por el incumplimiento de las obligaciones contraídas a raíz del contrato de arrendamiento objeto de la controversia. También, se detalló una reclamación por angustias mentales por las actuaciones del apelante. Tal y como indica y reitera el apelante en sus escritos, un ente jurídico no puede reclamar por angustias mentales, pero claro, un ente natural, como Zenaida, sí puede.

Basándose en la prueba oral desfilada, que incluyó no sólo el testimonio de Zenaida, sino el del representante del apelante, se acreditaron los daños contractuales y económicos alegados en la reconvención. También se estimó probado que Zenaida, en su capacidad personal, no en su capacidad de presidente de Stone Bits, sufrió las angustias mentales alegadas en la reconvención. Esta último declaró en detalle las vicisitudes que tuvo que pasar en el trámite y negociaciones con el apelante para lograr abrir un negocio en el centro comercial del apelante.

En cuanto a los gastos que se incurrieron para habilitar el local, se desfiló prueba oral sobre el particular, y aunque no se presentó ante nos, de la transcripción de la prueba surge que se comentó sobre la existencia de prueba documental también. Dicha prueba, según se infiere de la transcripción de la prueba, fue presentada ante el TPI y formó parte del expediente ante dicho foro.

Más aún, entre los medios de prueba, está claro que figura la testifical. Tomando en cuenta lo anterior, destacamos que Zenaida declaró que tuvo que solicitar líneas de crédito y préstamos para conseguir otro local en el cual pudiera poner en venta la mercancía que había comprado. Del dictamen apelado se colige que el TPI aquilató dicha prueba testifical, y más aún, le mereció credibilidad.

Concluimos que luego de examinar la transcripción de la prueba, no encontramos indicios de pasión, error, prejuicio o parcialidad en la apreciación que realizó el TPI a estos efectos. El TPI pudo distinguir, basándose en

la prueba oral desfilada, aquellas reclamaciones y evidencia que apoyaban la reclamación de los daños sufridos por Stone Bits, de aquéllos que en su plano personal, sufrió Zenaida, quien a su vez, y eso está claro en el récord, es presidente de Stone Bits. En este caso, nos negamos a sustituir nuestro criterio por el del TPI en cuanto a la apreciación de la prueba.

La discusión de estos asuntos dispone cabalmente de los méritos del recurso del apelante.

**IV**

Por los fundamentos expuestos, confirmamos el dictamen apelado.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones