EL PUEBLO, RECURRENTE, *v.* EL REGISTRADOR DE SAN JUAN, SECCIÓN 1ª., RECURRIDO.

Recurso gubernativo contra nota del Registrador de la Propiedad de San Juan, Sección 1ª., negando la inscripción de una escritura sobre arrendamiento de una parcela de manglares.

No. 238.—Resuelto en julio 16, 1915.

RECURSOS GUBERNATIVOS — NOTA CONSENTIDA — CONSECUENCIAS DE LOS PROPIOS ACTOS DE UNA PARTE.—Cuando una nota es consentida en la vía gubernativa por la parte recurrente, debe estar y pasar dicha parte por las consecuencias de sus propios actos.

ID.—DESESTIMACIÓN DEL RECURSO—PARTES INTERESADAS.—La desestimación de un recurso gubernativo por no haber sido interpuesto en tiempo por el recurrente, ha de entenderse sin perjuicio de los derechos que puedan asistir a otras partes interesadas que en nada han intervenido en el registro para pedir la inscripción del mismo documento y recurrir gubernativamente de la calificación del registrador.   Véase *Colonial Company* v. *El Registrador*, 1 S. P. R., 396, 401.

MANGLARES DE LA BAHÍA DE SAN JUAN—ARRENDAMIENTO O VENTA—FACULTADES DEL COMISIONADO DEL INTERIOR.—De acuerdo con las leyes vigentes, y espe-

cialmente por la de marzo 11, 1909, el Comisionado del Interior de Puerto Rico, que es el funcionario apropiado para ello, está expresamente facultado para, con la aprobación del Consejo Ejecutivo, arrendar por el número de años que estime conveniente, o vender, los manglares o poyales pertenecientes a El Pueblo de Puerto Rico que circundan la bahía de San Juan, sin que sea aplicable al caso el precepto general contenido en el artículo 1451 del Código Civil.

ARRENDAMIENTO—PRECIO CIERTO.—El precio cierto es un requisito esencial en todo contrato de arrendamiento, pudiendo consistir dicho precio ya en una cantidad de dinero expresamente pactada para ser satisfecha en períodos de tiempo fijos, como sucede de ordinario; ya en una compensación material evidente que el arrendador reciba del arrendatario a cambio del disfrute de la cosa arrendada, como ocurre en este caso.

VENTA—ARRENDAMIENTO—EXENCIÓN DEL PAGO DE CONTRIBUCIONES.—Cuando El Pueblo de Puerto Rico vende sus tierras, para que éstas dejen de pagar contribuciones, es necesario que se las exima expresamente por la autoridad que tenga facultades para ello; mas cuando El Pueblo se limita a arrendar sus propiedades, entonces no es necesario que las exima expresamente del pago de contribuciones para que se entienda que lo están. En caso de venta, El Pueblo se desprende de la propiedad; en el de arrendamiento, la conserva, percibiendo un precio cierto a cambio del disfrute de la misma.

Los hechos están expresados en la opinión.

Abogado del recurrente: *Sr. Howard L. Kern, Attorney General de Puerto Rico*.

El Registrador recurrido Sr. José S. Belaval, compareció por medio de su sustituto Sr. Emigdio S. Ginorio.

EL JUEZ ASOCIADO SR. DEL TORO, emitió la opinión del tribunal.

Antes de entrar en la resolución de las cuestiones envueltas en este recurso gubernativo, debemos hacer referencia a la decisión de esta corte en el caso de *Behn* v. *El Registrador de San Juan*, 21 D. P. R., 513. De una parte el Comisionado del Interior de Puerto Rico y de otra Hernand Behn, otorgaron cierta escritura pública sobre arrendamiento de una parcela de manglares pertenecientes a El Pueblo de Puerto Rico, situada en la bahía de San Juan. El arrendatario Behn presentó el contrato para su inscripción en el registro y el registrador se negó a ello por los motivos que expresó en nota fechada el 15 de junio de 1914. El arrendatario no estableció dentro del término legal recurso gubernativo contra la nota de 15 de junio de 1914.

Así las cosas, las indicadas partes contratantes otorgaron otra escritura pública por virtud de la cual ratificaron y explicaron más detalladamente las cláusulas del primitivo contrato de arrendamiento y el arrendatario acudió de nuevo al registro de la propiedad. El registrador, por nota de 24 de agosto de 1914, estimó que sólo quedaban subsanados por virtud de la nueva escritura, ciertos defectos, pero no otros de naturaleza fundamental consignados en su nota de 15 de junio de 1914. El arrendatario apeló entonces para ante esta Corte Suprema contra ambas calificaciones del registrador.

Al considerar el recurso establecido por el arrendatario, esta corte, de acuerdo con la jurisprudencia sentada por la misma, se limitó a examinar y a resolver si se habían subsanado o nó por la parte interesada los defectos consignados por el registrador en su nota de 15 de junio, 1914, ya que dicha nota había sido consentida en la vía gubernativa por la parte recurrente, debiendo estar y pasar dicha parte por las consecuencias de sus propios actos. *Behn* v. *El Registrador de San Juan,* 21 D. P. R., 513, 522. Aplicada esa regla, no pudo esta corte decidir las cuestiones en realidad de verdad más importantes envueltas en el recurso, circunstancia que nos llevó a consignar en la opinión emitida al efecto, *Behn* v. *El Registrador,* 21 D. P. R., 513, 525, lo que sigue:

"También debemos en justicia hacer constar que lo resuelto por el registrador obliga en este caso, dentro del orden administrativo, al arrendatario que presentó el documento y consintió la resolución, mas no al arrendador que en nada intervino en el registro. Esta cuestión está resuelta por la ley y la jurisprudencia. Artículo 6 de la Ley Hipotecaria; *Colonial Company* v. *El Registrador,* 1 D. P. R., 396, 401."

Transcurrió algún tiempo y el arrendador presentó en el registro las escrituras de referencia, volviendo el registrador a negarse a inscribirlas, por medio de la siguiente nota contra la cual el arrendador por su abogado el Attorney General de

Puerto Rico, interpuso el presente recurso gubernativo. La nota recurrida, dice así:

"Denegada la inscripción del precedente documento, que es la escritura número 5 y fecha 21 de mayo de 1914, otorgada en esta ciudad ante el notario Don Roberto H. Todd, con vista de la señalada con el número 64, otorgada en esta ciudad el 29 de julio de 1914 ante el notario Don Herminio Díaz Navarro, por los siguientes defectos:

"1. Carecer de facultades el Comisionado del Interior para celebrar un contrato de arrendamiento por más de seis años, según el artículo 1451 del Código Civil o por más de quince años, previa aprobación del Consejo Ejecutivo, según el artículo 135 del Código Político, toda vez que la ley para autorizar el arrendamiento o venta de los manglares que rodean la bahía de San Juan, aprobada en once de marzo de 1909, no le concede expresa y terminantemente esa facultad, como lo requiere el citado artículo 1451 del Código Civil, que es el precepto fundamental en esta materia; y es regla de interpretación legal que no se entienda derogada una prohibición expresa de la ley, sino cuando, de un modo expreso también, lo determina el legislador.

"2. Que la ley citada de la Asamblea Legislativa autoriza al Comisionado del Interior sólo para arrendar o vender todo o parte de los manglares, en sus secciones 1ª. y 12ª.; y el clausulado que consta en la precedente escritura ni corresponde al de un contrato de venta de la parcela a que se refiere, ni al de arrendamiento de la misma; puesto que, en cuanto a este último, no se estipula el canon, renta o precio cierto por el goce o uso de la cosa que se dice arrendada, y, por tanto, carece de uno de los requisitos esenciales del contrato de arrendamiento, que fija el artículo 1446 del citado Código Civil vigente.

"3. No resulta expresa y claramente cumplida la condición de la sección 2ª. de la ley citada, puesto que, el arrendatario solamente contrae en la cláusula 2ª. de la escritura la obligación, vaga e indeterminada, de rellenar el terreno.

"4. Por que la facultad de arrendar o vender una parcela de los manglares, que confiere la sección 12ª. de la indicada ley, está limitada al caso de que dicha venta o arrendamiento fuera conveniente, por los motivos que consigna aquella, y estos motivos no resultan de la escritura anterior.

"5. En cuanto a la servidumbre establecida en la cláusula 14ª. no está autorizado el Comisionado del Interior para constituirla con arreglo a la ley del caso.

"6. Que la exención de contribuciones que establece la cláusula 7ª. no es la que autoriza la sección 3ª. de la expresada ley de 11 de marzo de 1909.

"7. El convenio comprendido en la última parte de la cláusula 9ª. de la escritura no está autorizado por la antedicha ley de 11 de marzo de 1909; no tomándose en su lugar anotación preventiva, con arreglo a lo resuelto por la Dirección General de los Registros de la Propiedad y del Notariado fecha 30 de marzo de 1878, jurisprudencia aceptada por la Corte Suprema de Puerto Rico en el caso de *Barreras* v. *El Registrador de la Propiedad de Caguas,* página 556, tomo 15 D. P. R.  San Juan, P. R., 19 de mayo de 1915.  El Registrador, José S. Belaval."

Procederemos a estudiar los motivos en que basa su negativa el registrador por el mismo orden en que aparecen en su nota, pero antes haremos un extracto del contenido de las escrituras de 21 de mayo y 29 de julio de 1914.

Se otorgó la primera ante el Notario Público Roberto H. Todd, por Ernest S. Wheeler, Sub-Comisionado del Interior, actuando como comisionado por encontrarse vacante dicho cargo, y Hernand Behn, quienes elevaron a escritura pública y ratificaron un contrato de arrendamiento que habían celebrado el 12 de noviembre de 1913.  La propiedad arrendada consiste en una parcela de manglares del Pueblo de Puerto Rico, situada en la bahía de San Juan, al este del muelle de San Antonio, y los términos y condiciones del contrato pueden resumirse como sigue:

1. Treinta años de plazo contados a partir del 12 de noviembre de 1913, sin que el arrendatario, sus sucesores o cesionarios, tengan que pagar canon de arrendamiento, siempre que cumplan con las otras condiciones que se les imponen;

2, el arrendatario deberá construir una línea de muelles o malecón, dragar el canal y rellenar el terreno, en la forma en que se especifica, gastando en las referidas obras una suma no menor de $105,000 moneda americana;

3, dicho arrendatario comenzará los trabajos de mejoras especificadas, dentro de cuatro meses de la fecha del contrato, y concluirá dichas mejoras dentro de dos años de dicha fecha. "siendo entendido y convenido que las referidas condiciones con respecto a las fechas de empezar y completar dicho trabajo quedan substituídas por las condiciones enumeradas en el párrafo número uno (1) de las *condiciones suspensivas del arrendamiento,* copia de las cuales se hizo parte de la proposición original sometida por el referido arrendatario para el arrendamiento del terreno en cuestión;"

· 4, el arrendamiento no empezará a tener efecto hasta haberse completado por el arrendatario las obras especificadas y hasta que éstas sean aceptadas por la Junta del Puerto de San Juan;

5, todo el terreno rellenado, el malecón y el dragado, quedarán de la propiedad del Gobierno Insular, libre de gastos, a la terminación del contrato;

6, los edificios que construya sobre el terreno el arrendatario, serán de su propiedad siempre que los retire dentro de los cuatro meses siguientes al vencimiento del contrato. De otro modo quedarán de la propiedad del Gobierno Insular, libre de gastos;

7, la propiedad arrendada y sus mejoras quedarán exentas del pago de contribución, pero todas las demás propiedades sobre el terreno rellenado estarán sujetas al dicho pago;

8, el arrendatario hará todas las reparaciones que le ordene la Junta del Puerto de San Juan y entregará al Gobierno Insular la propiedad arrendada en buenas condiciones;

9, dicho arrendatario, construirá y mantendrá durante la vida del arrendamiento un malecón permanente en el frente del agua del terreno arrendado, con sujeción a las condiciones que se especifican, quedando además estipulado y convenido que "en lo que se refiere a aquella parte de la propiedad arrendada que da frente al Canal de San Antonio el referido arrendatario construirá un malecón temporal, siendo entendido y convenido que dicho arrendatario podrá, si así quisiese

hacerlo, hacer una proposición suplementaria al Consejo Ejecutivo de Puerto Rico, que podrá ser rechazada o aceptada a discreción del mismo, en cualquier tiempo antes de cinco años anteriores a la expiración de su arrendamiento, ofreciendo construir un malecón permanente para tomar el lugar del malecón temporal, en consideración de una extensión de los términos de este arrendamiento.''

10. El arrendatario dragará y mantendrá, durante la vida del contrato, a lo largo del malecón permanente construído por él, un canal de treinta metros de ancho y de una profundidad no menor que la fijada en el mapa de ''Mejoras del Puerto de San Juan.''

11, el arrendatario rellenará y mantendrá la propiedad arrendada a un nivel no menor de un metro cinco centímetros sobre la mínima marea baja;

12, el arrendatario no emprenderá las obras sin antes recibir la aprobación de la Junta del Puerto de San Juan.

13, el malecón y la proyectada área de calle al final y cerca de la orilla del embarcadero, al este del Muelle de San Antonio, (plano de mejoras del Puerto de San Juan), no serán arrendados, debiendo construirse el malecón correspondiente a dicha sección por el Gobierno Insular cuando lo crea conveniente, sin que el arrendatario pueda reclamar nada por la falta de su construcción;

14, el arrendador proporcionará al arrendatario dentro de dos años contados a partir de la fecha del contrato, ''un derecho de vía que conduzca a la propiedad arrendada, en tal sitio, que dicho arrendatario pueda tener acceso razonablemente seguro y conveniente a dicha propiedad siempre que el referido derecho de vía se proporcione sobre terrenos pertenecientes al Gobierno Insular.''

15. El arrendatario usará la propiedad como depósito para almacenaje de carbón, aceite, etc., y para la venta de dichos productos;

16, se concederán iguales derechos a todos los que quieran comprar los artículos almacenados, ''bajo una tarifa estable-

cida por el concesionario dependiente de las cantidades compradas;"

18, para atracar al muelle debe obtenerse el consentimiento del arrendatario, y

19. Los barcos del Gobierno de los Estados Unidos, en caso de emergencia, tendrán derecho de prelación, libre de gasto alguno, a usar del depósito.

La segunda escritura, o sea la de 29 de julio de 1914, se otorgó por las mismas partes ante el Notario Público Herminio Díaz Navarro y en ella se hizo constar que el arrendamiento de la parcela se sacó a público remate bajo las condiciones que constan en el documento· que se agrega a la escritura;··que en dicho remate sólo fué licitador el señor Behn, agregándose también a la escritura su proposición escrita; que a virtud del remate se otorgó el documento de 12 de noviembre de 1913 que se insertó íntegro y se ratificó en la escritura de 21 de mayo de 1914; y que el contrato fué autorizado por el Consejo Ejecutivo, en sesión pública celebrada el 23 de octubre de 1913, según documento que se une de igual modo a la escritura.

Las cláusulas· tercera, décima cuarta y novena de la escritura de 21 de mayo de 1914, quedaron aclaradas en la de 29 de julio del mismo año del siguiente modo: con respecto a la tercera, que las llamadas "condiciones suspensivas del arrendamiento" eran las que constaban de un documento que se unió a la escritura y que el contenido de ese documento demostraba que el contrato de que se trata era de interés público puesto que el arrendatario se comprometía a invertir una buena suma de dinero en el saneamiento de terrenos desecados de la propiedad del Pueblo de Puerto Rico; en cuanto a la décima cuarta, que el derecho de paso o vía que el arrendador se compromete a facilitar al arrendatario está basado en la obligación que le impone el artículo 574 del Código Civil, toda vez que la parcela arrendada no tiene otra salida propia

que por los terrenos del Pueblo de Puerto Rico que forman el resto de la finca de que aquella ha sido segregada, y con respecto a la cláusula novena, que lo hecho constar obedecía al estudio que en el Departamento del Interior se había lle- vado a efecto para que la obra de relleno, dragado y construc- ción de malecones del Puerto de San Juan quedara técnica- mente finalizada.

1. Veámos si el Comisionado del Interior tiene o nó facul- tades para arrendar la propiedad de que se trata, por más de seis años.

El cargo de Comisionado del Interior fué creado por la Ley Orgánica de Puerto Rico. La sección 24 de dicha ley, es como sigue:

"Que el Comisionado del Interior vigilará todas las obras de ca- rácter público, y tendrá a su cargo todos los edificios, fincas y terre- nos públicos no pertenecientes a los Estados Unidos, llenando los re- quisitos ·y cumpliendo las demás obligaciones que determine la · ley; y pasará al Secretario del Interior de los Estados Unidos, por con- ducto del Gobernador, los informes que aquél le exigiere, los cuales se trasmitirán todos los años a'l Congreso."

En 1902, la Legislatura de Puerto Rico, fijó con toda pre- cisión las facultades del Comisionado, actuando sobre la base previamente establecida por el Congreso de los Estados Uni- dos. Véanse los artículos 133 al 137, ambos inclusives, del Código Político. El artículo 135, de dicho Código, dice así:

"El Comisionado del·Interior podrá, previa aprobación del Con- sejo Ejecutivo, disponer el arrendamiento, por un período que no exceda de quince años; y con el consentimiento de la Asamblea Legis- lativa, la venta de todos los terrenos cedidos a la Isla de Puerto Rico por los Estados Unidos o que en adelante le cedieren éstos, o de otro modo adquiridos."

En 1909 la Legislatura de Puerto Rico consideró necesario para contribuir a las mejoras del Puerto de San Juan, auto- rizar el arrendamiento o la venta de los manglares que lo rodean, y al efecto decretó la necesaria ley. Las secciones

1, 2 y 12 de dicha ley, (Leyes de 1909, pág. 203), que son las que guardan más estrecha relación con este caso, dicen así:

"Sección 1.—El Comisionado del Interior, mediante la aprobación del Consejo Ejecutivo, queda por la presente autorizado y facultado para arrendar por el término de años que en cada caso fuere conveniente, o vender en pública subasta, todos los manglares o poyales pertenecientes al Pueblo de Puerto Rico que circundan la bahía de San Juan.

"Sección 2.—En todo arriendo o venta efectuado con arreglo a las disposiciones de la presente se dispondrá al arrendatario o comprador la condición de desecar los terrenos arrendados o vendidos, dentro de cierto número de años, consignándose dicho plazo en el contrato de arrendamiento o escritura de venta, y la falta de cumplimiento de esta condición será causa suficiente para la cancelación del arriendo o, en caso de venta, para que el Gobierno de Puerto Rico, por medio del Comisionado del Interior y con la aprobación del Consejo Ejecutivo, exija la devolución del terreno al Pueblo de Puerto Rico, bajo condiciones y en circunstancias que se estimaren justas y equitativas al tiempo de efectuarse.

"Sección 12.—Además de la facultad que por la presente se le confiere para vender en pública subasta los manglares y poyales que circundan la bahía de San Juan, estará también facultado el Comisionado del Interior, con la aprobación del Consejo Ejecutivo, para arrendar o vender cualquiera parte de dichos terrenos mediante negociación directa, sin recurrir a subasta pública, cuando dicho arriendo o venta fuere conveniente en conexión con el otorgamiento de alguna franquicia o cuando claramente resultare en interés público el efectuar en esta forma algún arriendo o venta de dichos terrenos, y en tales casos el contrato de arrendamiento o escritura de venta contendrá las estipulaciones a la duración del arrendamiento, las mejoras que deberán realizarse en los terrenos arrendados o vendidos, el empleo que habrá de darse a los mismos y demás condiciones que se estimaren de interés público."

Como puede verse por los preceptos de ley citados, el Comisionado del Interior de Puerto Rico, el funcionario apropiado para ello, está expresamente autorizado para, con la aprobación del Consejo Ejecutivo, arrendar o vender los manglares o poyales pertenecientes al Pueblo de Puerto Rico que circundan la bahía de San Juan. Y a nuestro juicio, la auto-

rización concedídale en la ley especial citada, es bastante para arrendar dichos manglares o poyales por el número de años que se estime conveniente, no siendo aplicable a este caso expresamente previsto por el legislador, el precepto general del Código Civil (art. 1451) -invocado por el registrador en su nota. El arrendamiento de los manglares que circundan la bahía de San Juan, debe regirse, por voluntad de la Legislatura por la repetida ley de marzo 11, 1909, decretada expresamente para ello.

2. ¿Puede calificarse de arrendamiento el contrato de que se trata en este caso? El registrador sostiene que no, porque, según él, carece de uno de los requisitos esenciales que para la existencia de dicho contrato fija el artículo 1446 del Código Civil, a saber, la estipulación del canon, renta o precio cierto por el goce o uso de la cosa que se da en arrendamiento.

En efecto, el artículo 1446 invocado prescribe que "en el arrendamiento de cosas, una de las partes se obliga a dar a la otra el goce o uso de una cosa por tiempo determinado y precio cierto."

Ahora bien ¿implica el hecho de haberse consignado en el contracto que se trata de inscribir en el registro, que el arrendatario no tendrá que pagar canon de arrendamiento alguno, la no existencia de precio cierto en la transacción celebrada?

A nuestro juicio es necesario reconocer que dicha cláusula introduce cierta confusión, pero, teniendo en cuenta que el uso de las tierras se cede en consideración al relleno de las mismas, al dragado de un canal y a la construcción de un malecón, en cuyas obras debe invertirse una suma no menor de ciento cinco mil pesos, la última pregunta enunciada debe responderse en la negativa, y como consecuencia de ello en la afirmativa la primera.

Scaevola, en su Código Civil, tomo 24, pág. 403, al tratar sobre el *precio* como requisito esencial del contrato de arrendamiento se expresa así:

"Según nuestro modo de pensar, en el precio no hay que mirar tanto a la transmisión de su propiedad como a la compensación eco-

nómica del provecho que el arrendador concede al arrendatario permitiéndole ejercitar en la cosa de su pertenencia actos y percepciones de propietario. Esta compensación económica, útil a los dos contratantes, sea cualquiera el modo de efectuarla, es la que caracteriza la *merces* en el arrendamiento, porque por ella el contrato cumple su fin en la vida social.''

Y Manresa, en sus Comentarios al mismo Código, tomo 10, página 451 (2ª. edición), ocupándose de la materia en cuestión, dice:

''Se ha discutido ampliamente si el precio puede consistir en especie, pero distinta de aquella que se obtenga de la cosa, y mientras unos se han decidido por calificar el contrato en que tal ocurriera de innominado, otros han optado por mantener el concepto de arrendamiento.

''Parécenos lo más acertado seguir la opinión que formula Pacifici-Mazzoni, diciendo que, en tesis general, siempre que de una parte haya concesión del derecho personal de goce de una cosa y de otra traslación de propiedad de otra cosa en equivalencia de tal goce, existe arrendamiento. Aunque, en último término, esto implicará siempre una cuestión de prueba, en la cual lo que habrá que probar será cuál fué la intención de las partes, si celebrar un arrendamiento u otro contrato de distinta naturaleza.''

Además, la cuestión de si el contrato celebrado es o no de arrendamiento, ha sido suscitada por el Registrador a los efectos de negar al Comisionado del Interior la facultad de otorgarlo de acuerdo con la ley de 11 de marzo de 1909, ya que dicha ley se refiere únicamente a contratos de venta y arrendamiento. Pero si bien es verdad que la ley califica de venta y arrendamiento los contratos cuya celebración autoriza, también lo es que prescribe que en todo arriendo o venta * * * se impondrá al arrendatario o comprador la condición de desecar los terrenos arrendados o vendidos, dentro de cierto número de años, consignándose dicho plazo en el contrato de arrendamiento o escritura de venta.''

La condición de desecar un terreno inundado no es común en contratos de arrendamiento, pero en esta ocasión el legislador la tuvo en cuenta y él mismo calificó de arrendamiento

el contrato que debía celebrarse imponiendo dicha condición. En tal virtud, más importancia tiene, a los efectos de investigar las facultades del Comisionado del Interior, las condiciones del contrato que se le autoriza celebrar, que la calificación del mismo.

Nos parece oportuno transcribir también aquí la opinión del comentarista Scaevola emitida al tratar sobre el precio en los contratos de arrendamiento, en el mismo tomo y página de su Código Civil arriba citados:

"* * *. Tomando en cuenta la difusión de la vida económica y la complejidad de formas jurídicas que aquella engendra, hay que admitir y adaptar estas formas al género a que pertenezcan, aunque sus caracteres accidentales difieran bastante del arquetipo. Es mucho menos práctico eliminarlas, llevándolas al campo de los contratos innominados, donde reina un libertarismo anorgánico opuesto a la vida normal de la contratación, que afiliarlas a un tipo de los conocidos y regimentados."

3. A nuestro juicio no existe el defecto señalado con el número 3, por el registrador. Las obligaciones contraídas por el arrendatario, según se desprende de la simple lectura de los documentos, no son vagas e indeterminadas, sino expresas y precisas, y el contrato celebrado está en armonía con la letra y el espíritu de la ley para autorizar el arrendamiento o venta de los manglares que rodean la bahía de San Juan, de 11 de marzo de 1909.

4. Los documentos presentados al registro, revelan la existencia de la circunstancia a que se refiere el registrador en el número cuatro de su nota de 19 de mayo de 1915.

La política del Gobierno de Puerto Rico con respecto a las mejoras del puerto de San Juan, quedó fijada en sus leyes. Los terrenos que se arriendan en este caso concreto están calificados en la actualidad de manglares o poyales. El contrato de arrendamiento se otorgó sin duda alguna en conexión con la franquicia concedida para la edificación y explotación de un muelle. Y el relleno de terrenos inundados a la orilla de un puerto como el de San Juan, la construcción de un male-

cón en el límite de esos terrenos con las aguas, y la edificación y operación de un muelle de carga, descarga y almacenaje, son obras cuya utilidad pública es manifiesta, tanto más cuanto que, según el contrato, se realizarán sin costo alguno por parte del Pueblo de Puerto Rico y con la condición de que el dicho Pueblo no se desprenderá en ningún momento del dominio de las tierras y adquirirá el de las mejoras llevadas a efecto en las mismas, al cabo de cierto número de años. Además, en este caso no se trata de un arriendo negociado directamente por el Comisionado del Interior sino llevado a efecto mediante subasta que fué luego aprobada por el Consejo Ejecutivo.

5. Nos parece que la explicación contenida en la escritura de 29 de julio es suficiente para demostrar que la obligación que expresamente se contrae en el contrato de arrendamiento con respecto al deber de proporcionar paso al arrendatario siempre que sea por terrenos pertenecientes al Pueblo de Puerto Rico, puede considerarse en cierto modo comprendida dentro de la prescripción del artículo 574 del Código Civil.

Ademas, leyendo todos los documentos presentados en este caso, se observa que al otorgarse el contrato de arrendamiento de que se trata, se tuvo en cuenta el plano de las mejoras del puerto de San Juan, que comprenden dragados, rellenos, construcción de malecones, de muelles y de calles, etc., y la servidumbre de paso establecida, se sujetará a lo previamente fijado en el plano de dichas mejoras.

6. Aun cuando no se hubiera estipulado en la cláusula 7ª. del contrato de arrendamiento de que se trata que El Pueblo de Puerto Rico no cobraría contribuciones por la propiedad arrendada, es bien claro que de acuerdo con la ley no las hubiera percibido, porque la ley exime del pago de contribución la propiedad de El Pueblo de Puerto Rico, con la excepción que establece, en la cual no está comprendido este caso. Véase el artículo 291 del Código Político, en relación con el 296 del propio cuerpo legal.

Se comprende perfectamente que si el Pueblo *vende* sus tierras, para que éstas dejen de pagar contribuciones, sea necesario que se las exima expresamente por la autoridad que tenga facultades para ello: de ahí la disposición de la sección 3 de la ley de 11 de marzo de 1909 que cita el registrador. El caso de *venta* es distinto del de *arrendamiento*. En el primero el Pueblo se desprende de la propiedad, deja de ser dueño. En el segundo la conserva, continúa siendo el dueño, percibiendo, además, un precio cierto a cambio del disfrute directo de la propiedad arrendada.

7. El convenio contenido en la última parte de la cláusula 9ª. del contrato, a que se refiere el registrador en el número 7 de la nota recurrida, está en armonía con el plan general de mejoras del Puerto de San Juan, y como además, no impone obligación alguna al Pueblo de Puerto Rico, no creemos que pueda servir de base para la negativa a registrar la escritura presentada.

Por virtud de todo lo expuesto, opinamos que debe revocarse la nota recurrida y ordenarse la inscripción solicitada.

> *Revocada la nota recurrida y ordenada la inscripción solicitada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, Aldrey y Hutchison.