Colón Birriel, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
I
Angel Luis Pérez Rodríguez, Haydee Redondo Maymí y la Sociedad Legal de Gananciales por ambos (en adelante los "apelantes"), recurren de una "Sentencia" emitida por el Tribunal de Primera Instancia, Sala Superior de Caguas, el 5 de abril de 2000 y archivada en los autos copia de su notificación el 10 de ese mes y año. Apelación, Notificación, Sentencia, a las págs. 1-13 del apéndice. El dictamen declaró "Ha Lugar" una "Moción Solicitando Desestimación" presentada por Rafael Hernández Barreras, su esposa Fulana de Tal Barreras y la Sociedad Legal de Bienes Gananciales entre ellos compuesta D/B/A Industrial Angora (en adelante los "apelados"), desestimando así una demanda que, sobre consignación, presentaran los apelantes. En su consecuencia, se condenó a éstos al pago de costas y $500.00 por concepto de honorarios de abogados. Apelación, Sentencia, Notificación, supra.
Inconforme, los apelantes le imputan al foro apelado haber incurrido en los siguientes errores:

"PRIMER ERROR: Erró el Tribunal de Primera Instancia al establecer en la Sentencia dictada que "las partes pactaron el arrendamiento de una propiedad localizada en el Barrio Bairoa de Caguas, la cual deforma específica se describe en el contrato.

SEGUNDO ERROR: Erró el Tribunal de Primera Instancia al determinar que el Arrendador cumplió con sus obligaciones contractuales.

TERCER ERROR: Erró el Tribunal de Primera Instancia al convertir la Moción de Desestimación en una Solicitud de Sentencia Sumaria, dado que bajo este supuesto, no procedía declararla con lugar, dado que 
*882
existía controversia sustancial sobre diversas cuestiones de hechos.

CUARTO ERROR: Erró el Tribunal de Primera Instancia al desestimar el pleito sin resolver la acción en daños que radicó la parte demandante."

Exponemos a continuación, en lo pertinente, el trasfondo fáctico y procesal que dio origen al recurso.
II
El co-apelado Rafael Hernández Barreras (Hernández Barreras o el arrendador) es el dueño de un local comercial localizado en la Urbanización Industrial Angora del Barrio Bairoa, en el municipio de Caguas. El 12 de junio de 1998, Hernández Barreras, como arrendador, y el co-apelante Angel Luis Pérez Rodríguez (Pérez Rodríguez o el arrendatario), como arrendatario, suscribieron un contrato de arrendamiento sobre un área de 9,000 pies cuadrados del local comercial antes descrito sujeto a una serie de cláusulas y condiciones. Apelación, Contrato, a las págs. 21-40 del apéndice. El área arrendada sería destinada por el arrendatario a un negocio de tratamiento de desperdicios biomédicos. El arrendamiento tendría un término de cinco (5) años, comenzando el 15 de junio de 1998 y terminando el 14 de junio de 2003. Acordaron un canon mensual de $2,250.00 por los primeros tres (3) meses y de $4,500.00 por los restantes cincuenta y siete (57) meses. Se estipuló que el referido canon sería pagadero por mensualidades anticipadas en las oficinas de Hernández Barreras y sin reclamación previa. Al firmarse el contrato, el arrendador recibió por concepto de fianza la cantidad de $4,500.00, como garantía del cumplimiento del contrato.
Mediante la cláusula 15(a) del contrato, establecieron que si el arrendatario dejaba de pagar cualquier plazo del canon, o violaba u omitía cumplir cualquiera de los términos, pactos o condiciones del arrendamiento, el arrendador tendría derecho, a su opción, a dar por terminado el arrendamiento. A tenor con la cláusula 15(b), si el arrendador daba por finalizado el mismo, conforme a lo expuesto en la cláusula 15(a), supra, la responsabilidad del arrendatario por el canon estipulado subsistiría hasta finalizar el contrato. Los cánones así recibidos, se considerarían en concepto de daños líquidos. En la eventualidad que la propiedad fuera arrendada durante el resto del término del contrato, los cánones recibidos serían abonados a dichos "daños".
Vigente el contrato de arrendamiento, los apelantes incurrieron en un patrón de morosidad al enviar tardíamente al arrendador, los pagos de los cánones de arrendamiento, a saber, la primera mensualidad por $2,250.00 que venció el 15 de junio de 1998, se pagó el 15 de julio de 1998, es decir, se pagó treinta (30) días más tarde y la segunda mensualidad, que venció el 15 de julio de 1998, se pagó el 10 de agosto de 1998, es decir, veintiséis (26) días más tarde. El arrendador no recibió el pago de los cánones de agosto, septiembre y octubre de 1998, por lo que, ejercitando su derecho, conforme a la cláusula 15(a), supra, mediante comunicación certificada con acuse de recibo de 23 de octubre de 1998, cursada al arrendatario, dio por terminado el contrato. Apelación, Comunicación de 23 de octubre de 1998, a la pág. 73 del apéndice. Los apelantes nunca ocuparon el local objeto del contrato de arrendamiento por razón de estar realizando gestiones para conseguir los permisos y autorizaciones gubernamentales para operar el negocio que deseaban establecer en la propiedad.
Luego de notificada la comunicación dando por terminado el arrendamiento, Hernández Barreras no aceptó el pago de los cánones adeudados, no obstante, a que según se estableció en las cláusulas quince (15) y dieciséis (16) del contrato, tenía derecho a cobrarlos. Así las cosas, el 10 de diciembre de 1998, los apelantes presentaron su demanda de consignación. Apelación, Demanda, a las págs. 75-85 del apéndice. Alegaron, en síntesis, que el 12 de junio de 1998, suscribieron, como arrendatarios, el contrato de arrendamiento ya mencionado; que el arrendador lo resolvió unilateralmente, y en vista de negarse a recibir los cánones pactados, procedieron a consignarlos en el tribunal; y que no procedía la cancelación del contrato, por razón de que el único remedio accesible al arrendador era el desahucio por falta de pago al amparo del Art. 628 del Código de Enjuiciamiento Civil, 32 L.P.R.A. see. 2829.
*883 Trabada la controversia, el 19 de febrero de 1999, Hernández Barreras solicitó la desestimación de la demanda fundamentada en: a ) no exponer en sus alegaciones una reclamación que justificare la concesión de un remedio a tenor con las disposiciones de la Regla 10.2 de las de Procedimiento Civil; b) en el incumplimiento de las normas establecidas por el Código Civil sobre los contratos, en particular sobre el contrato de arrendamiento; c) en el incumplimiento de las disposiciones legales para la consignación; d) en el incumplimiento de las reglas de notificación en el caso de acciones que afectan el patrimonio de una sociedad de bienes gananciales; y e) en la inaplicabilidad de la Ley Núm. 464 de 25 de abril de 1946, conocida como la Ley de Alquileres Razonables, derogada por la Asamblea Legislativa. Señaló los hechos que, a su juicio, no estaban en controversia y acompañó a su moción una serie de documentos, entre éstos: a) el emplazamiento servido; b) el Contrato de Arrendamiento; c) el cheque correspondiente al importe de la fianza, los dos cheques correspondientes a los meses de renta pagados por adelantado y un cheque por $4,500.00 correspondiente a la renta de 09/15 a 10/15/98; d) su comunicación de 23 de octubre de 1998, dando por terminado el arrendamiento; y e) una declaración jurada en apoyo a su solicitud de desestimación. Apelación, Moción de Desestimación, a las págs. 100-140 del apéndice. El 9 de marzo, se ordenó a los apelantes expresarse en cuanto a la desestimación solicitada. Apelación, Notificación, a la pág. 141 del apéndice. Por su parte, los apelantes expresaron que la desestimación podía ser tomada como una "Moción de Sentencia Sumaria", por lo cual estaban notificando una toma de deposición a Hernández Barreras, a los fines de poder replicar a la desestimación. Apelación, Moción en Cumplimiento de Orden, a las págs. 142-145 del apéndice.
El 30 de septiembre de 1999, los apelantes solicitaron enmendar la demanda. Acompañaron a su escrito una "Demanda Enmendada" reclamando, en esencia, daños y perjuicios por la cancelación del contrato de arrendamiento y el posterior arrendamiento del inmueble a un tercero. Apelación, Moción Solicitando Enmienda a la Demanda, Demanda Enmendada, a las págs. 174-180 del apéndice. Tras otros incidentes, entre éstos, réplica de los apelantes a la oposición de Hernández Barreras a la entrega de unos documentos, escrito de éste solicitando prórroga para contestar la réplica, el 13 de octubre de 1999, los apelantes procedieron a exponer bajo juramento su oposición a la solicitud de desestimación de Hernández Barreras. Entre otros argumentos, señalaron que no procedía la desestimación de la demanda porque: a) ésta fue enmendada para incluir una acción de daños y perjuicios "por incumplimiento de contrato de la parte demandada para con los demandantes"', b) el contrato suscrito era uno de "adhesión"; c) el local arrendado no resultaba ser el que ahora intentaba mencionar la parte demandada; y d) la razón para la falta de pago fue "caso fortuito y fuerza mayor” motivada por el paso del Huracán Georges. Apelación, Réplica a Moción Solicitando Desestimación, a las págs. 185-192 del apéndice. Por su parte, el 30 de octubre de 1999, Hernández Barreras presentó duplica a la moción de los apelantes. Apelación, Dúplica a Réplica a Moción Solicitando Desestimación y Reiterando Solicitud de Desestimación, a las págs. 199-211. Posteriormente, el foro apelado dictó la sentencia objeto del presente recurso mediante la cual desestimó la demanda de consignación de los apelantes. Posteriormente, el foro apelado dictó la sentencia objeto del presente recurso mediante la cual desestimó la demanda de consignación de los apelantes. Así las cosas, el 24 de abril de 2000, los apelantes presentaron una "Moción de Reconsideración y Solicitud de Determinaciones de Hechos y Derecho Adicionales". Apelación, Moción, a las págs. 14-18 del apéndice. El 1ro. de mayo de 2000, notificada al día siguiente, se declaró "No Ha Lugar" a lo solicitado. Apelación, Notificación, a la pág. 19 del apéndice.
III
En nuestra jurisdicción rige el principio de autonomía contractual de las partes, quienes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público. Artículo 1207 de nuestro Código Civil, 31 L.P.R.A. see. 3372. Mercado v. Universidad, 143 D.P.R. 610, 627 (1997). También es norma reiterada que, conforme las disposiciones del artículo 1213 de nuestro Código Civil, 31 L.P.R.A. see. 3391, no existe un contrato, sino cuando concurren tres requisitos, a saber: "1) consentimiento de los contratantes; 2) objeto cierto que sea materia del contrato; y c) causa de la obligación que se establezca." (Enfasis suplido, ) Por otro lado, las obligaciones que nacen de los contratos tienen fuerza de ley entre los contratantes y deben cumplirse a tenor con los mismos. Artículo 1044 de nuestro Código Civil, 31, L.P.R.A. see. 2994. Mercado v. Universidad, supra. Perfeccionado un contrato, *884 mediando el consentimiento de las partes, éstas se obligan desde ese momento al cumplimiento de lo expresamente pactado, así como a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley. Artículo 1210 de nuestro Código Civil, 31 L.P.R.A. see. 3375. Sabido es que cuando los términos de un contrato, sus condiciones y exclusiones son claros y específicos y no dan lugar a dudas en cuanto a la intención de los contratantes, se estará al sentido literal de sus cláusulas. Artículo 1233 de nuestro Código Civil, 31 L.P.R.A. see. 3471. Unisys v. Ramallo Brothers, 128 D.P.R. 842, 852 (1991).
Siendo los tribunales los facultados para velar por el cumplimiento de los contratos, éstos no deben relevar a una parte de su obligación contractual cuando el contrato es legal y válido y no contiene vicio alguno. Mercado v. Universidad, supra; Cervecería Corona v. Commonwealth Ins. Co., 115 D.P.R. 345, 351 (1984); Olazábal v. U.S. Fidelity, 103 D.P.R. 448, 462 (1975).
En lo que respecta al contrato de arrendamiento, nuestro Código Civil lo define como un contrato mediante el cual una de las partes se obliga a ceder a la otra el goce o uso de una cosa por tiempo determinado y precio cierto. El objeto de este contrato puede ser cosas, obras o servicios. Código Civil, Arts. 1432,1433, 31 L.P.R.A. secs. 4011 y 4012, respectivamente. Pueblo v. Registrador, 22 D.P.R. 803, 813 (1915); Rossy v. Del Valle, 34 D.P.R. 726, 730 (1925). El arrendador, quien se obliga a ceder el uso de la cosa, ejecutar la obra o prestar un servicio, viene obligado a: (1) entregar al arrendatario la cosa objeto del contrato; (2) hacer en ella durante el arrendamiento todas las reparaciones necesarias a fin de conservarla en estado de servir para el uso a que ha sido destinada; (3) mantener al arrendatario en el goce pacífico del arrendamiento por todo el tiempo del contrato; y (4) suscribir y entregar al arrendatario un recibo por cada pago hecho por éste. 31 L.P.R.A. sees. 4031 y 4051.
Por su parte, el arrendatario está obligado a: (1) pagar el precio del arrendamiento en los términos convenidos, (2) usar la cosa arrendada como un diligente padre de familia, destinándola al uso pactado (y, a falta de pacto, al uso que se infiera de la naturaleza de la cosa arrendada), (3) pagar los gastos que ocasione la escritura del contrato. Art. 1445 del Código Civil, 31 L.P.R.A. see. 4052. Desde el punto del derecho positivo, el legislador exige que el pago del precio del arrendamiento se realice en "los términos convenidos". Art. 1445 del Código Civil, 31 L.P.R.A. see. 4052. Esto obliga, en cada caso, al examen de las cláusulas del contrato, antes de decidir si se infringió o no esta obligación, "[djebiendo advertirse que esta obligación de cumplir lo pactado abarca tanto a la cuantía, como a la forma, lugar o tiempo en el que el pago ha de realizarse". J. Fuentes Lojo, Suma de Arrendamientos Urbanos, 8va. ed., Barcelona, Lib. Bosch, 1983, pág. 2229. Mora Dev. Corp. v. Sandín, 118 D.P.R. 733, 743 (1987).
El Artículo 1446 de nuestro Código Civil, 31 L.P.R.A. see. 4053, dispone que: "[s]i el arrendador o el arrendatario no cumplieren las obligaciones expresadas en las secciones anteriores, podrán pedir la rescisión del contrato y la indemnización de daños y perjuicios, o sólo esto último, dejando el contrato subsistente". Mora Dev. Corp. v. Sandín, supra, págs. 741-742.
Nuestro Tribunal Supremo ha expresado que "las obligaciones derivadas del contrato de arrendamiento son bilaterales, por lo que están sometidas al principio general de que ninguna de las partes puede demandar el cumplimiento de la obligación contraria sin cumplir u ofrecer el cumplimiento de la obligación propia. En otras palabras, si el que incurre en incumplimiento exige la satisfacción de la prestación debida, la otra parte puede oponer la defensa del contrato incumplido (exceptio non adimpleti contractus) ". Mora Development v. Sandín, supra, a la pág. 742.
Por su parte, el Artículo 1077 de nuestro Código Civil, 31 L.P.R.A. see. 3052, establece, en lo pertinente, que:

"La facultad de resolver las obligaciones se entiende implícita en las recíprocas, para el caso de que uno de los obligados no cumpliese lo que le incumbe.

*885
El perjudicado podrá escoger entre exigir el cumplimiento o la resolución de la obligación, con el resarcimiento de daños y abono e intereses en ambos casos... ”.

Más aún, nuestro Tribunal Supremo ha observado que la obligación de pagar el precio pactado, es esencial a la existencia del contrato y no puede eliminarse o sustituirse por otra. Franceschi v. Texaco, P.R., Inc., 103 D.P.R. 759, 763 (1975); Del Toro v. Blasini, 96 D.P.R. 676, 684 (1968).
Por otro lado, en los artículos 1130 a 1135 de nuestro Código Civil, 31 L.P.R.A. sees. 3180-3185, se establecen los requisitos de la consignación. Se requiere para una consignación: a) el ofrecimiento de pago; b) el anuncio de la consignación; y c) en particular, el cumplimiento de las disposiciones que regulan el pago. La consignación no puede ser un vehículo para el cumplimiento de una deuda morosa. Orsini v. Sánchez, 67 D.P.R. 207 (1947). La consignación consiste en el depósito de la cosa debida por el deudor, de manera que quede en poder de la autoridad judicial y a disposición del acreedor que se haya negado sin razón a admitir el pago. Art. 1131 de nuestro Código Civil, 31 L.P.R.A. see. 3180. José Puig Brutau, Compendio de Derecho Civil, Vol. II, Bosch, Casa Editorial, S.A., 1987, pág. 85. Para que la consignación de la cosa libere al deudor, es preciso que la cosa haya sido ofrecida previamente al acreedor y éste no la haya aceptado; es decir, el deudor está obligado a intentar el pago normal. García v. Fernández, 8 D.P.R. 106 (1905). Para que la consignación se declare bien hecha y produzca sus efectos, es decir, se extinga la obligación y no haya que pagar intereses sobre lo adeudado, desde la fecha en que se hizo la misma, es preciso justificar ante la autoridad judicial, entre otras cosas, que el ofrecimiento de pago fue realizado. El deudor no puede condicionar dicho ofrecimiento, pues en tal caso, la condicionalidad del pago es inherente a la propia obligación. José Puig Brutau, supra, pág. 88. Por otro lado, el art. 1131 de nuestro Código Civil, 31 L.P.R.A. see. 3181, dispone, entre otras cosas, que la consignación será ineficaz si no se ajusta estrictamente a las disposiciones que regulan el pago.
De otra parte, la Regla 36.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, faculta a una parte a presentar una moción con el fin de que se dicte sentencia sumaria a su favor sobre la totalidad o cualquier parte de una reclamación. Soto v. Hotel Caribe Hilton, 137 D.P.R. 294, 300 (1994). De otro modo, la Regla 36.3 del mismo cuerpo legal, autoriza al tribunal dictar sentencia sumaria cuando no existe "controversia real sustancial en cuanto a ningún hecho material y... como cuestión de derecho debe dictarse sentencia a favor de la parte promovente". Rodríguez v. Secretario de Hacienda, 135 D.P.R. 219, 222 (1994); Corp. Presiding Bishop C.J.C. of LDS v. Purcell, 117 D.P.R. 714, 720-721 (1986); Tello v. Eastern Airlines, 119 D.P.R. 83, 86 (1987). Por tratarse de un remedio discrecional, el uso del mecanismo de sentencia sumaria tiene que ser mesurado y procederá sólo cuando el tribunal quede claramente convencido de que tiene ante sí documentos no controvertidos, surgiendo de los mismos que no existen controversias sobre los hechos materiales pertinentes y que, por lo tanto, lo que resta es aplicar el derecho, ya que una vista en los méritos resultaría innecesaria, J.A.D. M. v. Centro Comercial Plaza Carolina, 132 D.P.R. 785, 802 (1993); Corp. Presiding Bishop C.J.C. of LDS v. Purcell, 117 D.P.R. 714, 720 (1986); Roth v. Lugo, 87 D.P.R. 386, 397 (1963), propiciando la solución justa, rápida y económica de los pleitos que no presentan controversias genuinas y sustanciales de tales hechos. Hurtado v. Osuna, 138 D.P.R. 801, 809 (1995). Así, pues, en situaciones apropiadas, resulta ser el vehículo procesal adecuado que contribuye a descongestionar los calendarios judiciales. Pilot Insurance Company v. Crespo Martínez, 136 D.P.R. 624, 632 (1994).
Para ello, el tribunal debe: (1) analizar los documentos que acompañan la moción solicitando sentencia sumaria y los documentos incluidos con la moción en oposición y aquéllos que obren en el expediente del tribunal, y (2) determinar si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. Corp. Presiding Bishop C.J.C. of LDS v. Purcell, supra.
Expuestos estos principios jurídicos, examinemos la controversia principal ante nosotros, la cual, en esencia, se circunscribe en determinar si el arrendador podía, unilateralmente, según los hechos en el presente caso, dar por terminado o resuelto el contrato establecido entre él y el arrendatario.
*886 Comencemos con el primer y segundo error, es decir, que en el contrato suscrito por las partes no se describía de forma específica la propiedad arrendada y que Hernández Barreras incumplió con sus obligaciones contractuales. Veamos.
Surge de las determinaciones de hechos de la sentencia emitida y de los escritos y documentos, que el espacio en arrendamiento consistía de 9,000 pies cuadrados de un local comercial que tiene un total de 30,000 pies cuadrados. Específicamente, se estableció como objeto del contrato el local número 1 del Edificio Industrial de la Urb. Industrial Angora, sita en el Barrio Bairoa de Caguas, Puerto Rico. Como, se puede observar, el objeto cierto materia del contrato quedó identificado debidamente en el contrato suscrito por las partes, por lo que el planteamiento de los apelantes de que en el contrato no especificaba la propiedad arrendada es improcedente. De una lectura al contrato, a las alegaciones de la demanda y a la réplica a la moción de desestimación presentada por los apelantes, se desprende que el local a ser arrendado quedó plenamente identificado. De no haberse identificado plenamente la propiedad objeto del arrendamiento, los apelantes tenían a su alcance solicitar la nulidad del contrato por no existir el objeto cierto que era materia del contrato; no lo hicieron. Por otro lado, a los apelantes le fue mostrado el predio a ser arrendado antes de firmar el contrato, por lo que sabían lo que iban a arrendar. Es incompatible su proceder de consignar los cánones de arrendamiento a los fines de seguir con el contrato y su alegación de la falta del objeto cierto del contrato.
De otra parte, la alegación de que el apelado incumplió con sus obligaciones contractuales es inmeritoria. Según el contrato, ley entre las partes, los apelantes no ocuparían el local arrendado hasta tanto obtuviesen los permisos gubernamentales requeridos para establecer su negocio de tratamiento de biomédicos. A esos fines, la cláusula veintisiete (27) estableció que si los permisos fueran denegados, el contrato se daría por terminado. Como los apelantes nunca obtuvieron los permisos, no pueden reclamar incumplimiento alguno de contrato por parte del arrendador al éste no realizar las reparaciones a que venía conforme a la cláusula ocho (8) del contrato. Los errores no fueron cometidos.
Discutiremos ahora el tercer señalamiento de error; es decir, el que existía controversia de hechos por lo que no procedía dictarse sentencia sumaria. Veamos.
El arrendador solicitó la desestimación de la demanda por razón de que a base de las alegaciones presentadas procedía su desestimación. No obstante, el foro apelado procedió a la luz de las alegaciones y de los documentos obrantes en los autos y consideró la moción de desestimación como una de sentencia sumaria. Al así actuar, lo hizo correctamente. No debe quedar duda alguna en que los apelantes incumplieron con los pagos de los cánones de arrendamiento, en la forma y manera en que se obligaron. Se obligaron a pagar anticipadamente los cánones en la oficina del arrendador, cosa que no hicieron. Incumplieron en cuanto al pago de la cuantía pactada, así como a la forma, lugar en que el pago debía ser realizado. A la fecha en que el arrendador dio por terminado el contrato, los apelantes adeudaban las mensualidades de agosto 15 ($2,250.00), la de septiembre 15 ($2,250.00) y la de octubre 15 ($4,500.00). Los pagos que se habían efectuado, se hicieron tardíamente (en mora), incumpliendo así con los términos del contrato a que se obligaron. Ante la falta de pago, el arrendador podía dar por terminado el contrato (rescindirlo) a tenor con su cláusula quince (15); cosa que procedió a hacer mediante su comunicación de 23 de octubre de 1998.
Incumplido con su obligación, los apelantes presentaron su demanda de consignación, pretendiendo consignar las rentas adeudadas. Su proceder va en contra del estado de derecho, puesto que la consignación no puede ser vehículo para cumplir con una deuda morosa. Orsini v. Sánchez, supra. El incumplimiento del pago es en violación a lo estipulado en el contrato para dicho pago. Siendo ello así, no había controversia de hechos alguna, por lo que procedía aplicar el derecho, lo que correctamente hizo el foro apelado. Quedaba a su entera discreción convertir y tratar la moción de desestimación presentada como una de sentencia sumaria, cosa que hizo. Torres Capeles v. Rivera Alejandro, Op. de 30 de mayo de 1997, 97 J.T.S. 77, a la pág. 1087.
Resumiendo el contrato entre las partes claramente establecía en su cláusula 15(a), y así las partes *887 contratantes lo reconocieron, que si el arrendatario incumplía con lo allí expresado, en lo pertinente, no satisfacer el canon convenido, el arrendador, a su opción y unilateralmente, podría dar por terminado o resuelto dicho contrato. Según quedó establecido por las propias alegaciones de los apelantes, la forma en que éstos pretendían realizar los pagos de los cánones de arrendamiento, era contrario a sus obligaciones en el contrato. Se obligaron a hacer el pago de las mensualidades anticipadas en las oficinas de Hernández Barreras, sin necesidad de reclamación previa. Se desprende de los autos que los apelantes estuvieron en mora en varias ocasiones, por lo que el arrendador ejerció su derecho de resolver el contrato, facultad que se estipuló en el contrato. En el presente caso no existe razón por la cual el arrendador tenía que aceptar el pago tardío del canon convenido.
En cuanto al último señalamiento relativo a que el foro apelado no dispuso sobre la reclamación de daños de los apelantes, determinamos que tampoco fue cometido. Basta con referimos a las págs. 9-10 de la sentencia apelada, donde el ilustrado foro atiende el reclamo en ese sentido. A esos fines, copiamos del referido documento, en lo pertinente:

"Además, el Art. 1077 del Código Civil, 31 L.P.R.A. see. 3052, sobre el derecho de resolver obligaciones recíprocas, dispone que la facultad de resolver las obligaciones se entiende implícita en las recíprocas, para el caso de que uno de los obligados no cumpliere lo que le incumbe. El perjudicado podrá escoger entre exigir el cumplimiento o la resolución de la obligación, con el resarcimiento de daños y abono de intereses en ambos casos. También podrá pedir la resolución, aún después de haber optado por el incumplimiento, cuando éste resultare imposible."

Con relación a dicho articulado, nuestro más alto Tribunal se ha expresado de la siguiente forma:
"Hemos indicado que el Artículo 1077 del Código Civil, ante, establece una condición resolutoria tácita en todo contrato bilateral que opera ex proprio vigore. En consecuencia, si uno de los contratantes incumple, el otro puede darlo por resuelto sin necesidad de que un tribunal así lo declare... Este principio general en materia de contratos recíprocos, denominado en latín exceptio non adimpleti contractus, constituye una defensa oponible a la parte que, habiendo incurrido en incumplimiento, exige, no obstante, el cumplimiento del contrato". Constructora Bauzá, Inc. v. García López, 129 D.P.R. 579, 593 (1991).
La defensa de excepción de cumplimiento defectuoso, modalidad de la excepción general de contrato no cumplido o exceptio non adimpleti contractus, norma fundamentada en la simultaneidad y reciprocidad de las obligaciones, establece que ninguna parte puede exigir el cumplimiento de una obligación contraria sin antes cumplir o intentar cumplir su propia obligación. Martínez v. Colón Franco, 125 D.P.R. 15, 33 (1989).
Desde el punto de vista del derecho positivo, se exige que el pago del precio del arrendamiento se realice en los términos convenidos. Artículo 1445 del Código Civil, 31 L.P.R.A. see. 4052. Esto obliga, en cada caso, al examen de las cláusulas del contrato, antes de decidir si se infringió o no esta obligación, [djebiendo advertirse que esta obligación de cumplir lo pactado abarca tanto a la cuantía, como a la forma, lugar o tiempo en que el pago ha de realizarse. Mora Development Corp. v. Sandín, supra, a la pág. 743. En el caso de contratos de arrendamiento, si una parte deja de cumplir alguna de sus obligaciones, el remedio para la otra parte es -al amparo del Artículo 1446 del Código Civil-, la resolución del contrato y la indemnización de daños, o sólo esto último, dejando el contrato en vigor.
En Mora Development Corp. v. Sandín, supra, a la pág. 742, el Tribunal Supremo expresó que las obligaciones derivadas del contrato de arrendamiento son bilaterales, por lo que están sometidas al principio general de que ninguna de las partes puede demandar el cumplimiento de la obligación contraria sin cumplir u ofrecer el cumplimiento de la obligación propia. En otras palabras, si el que incurre en incumplimiento exige la satisfacción de la prestación debida, la otra parte puede oponer la defensa del contrato incumplido {exceptio non adimpleti contractus).
*888 Tomadas como ciertas las alegaciones de la parte demandante y haciendo todas las inferencias permisibles que sean favorables, procede la desestimación de su reclamación de daños y perjuicios por la aplicación de la doctrina de exceptio non adimpleti contractus."
Por otro lado, es menester enunciar la norma trillada de que las determinaciones del tribunal de instancia deben ser objeto de gran deferencia, en ausencia de circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto. Riley v. Rodríguez de Pacheco, 119 D.P.R. 762, 797 (1987). Un tribunal apelativo no debe intervenir innecesariamente porque puede estar usurpando las;, facultades adjudicativas del tribunal apelado. Morán Simó v. Gracia Cristóbal, 106 D.P.R. 155, 161 (1977). Sin embargo, esto no significa que renunciemos a nuestra función revisora en instancias apropiadas y meritorias. El presente caso no configura una de las circunstancias extraordinarias para nosotros intervenir con la adjudicación de credibilidad que hizo el foro apelado.
En atención a lo expuesto, confirmamos la sentencia apelada.
Lo acordó el Tribunal y lo certifica la señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General