EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Ramón Lugo Morillo<br><br>Recurrido<br><br>v.<br><br>Elizabeth Natera Montilla<br><br>Peticionaria | Certiorari<br><br>2024 TSPR 74<br><br>214 DPR ___ |

Número del Caso:  CC-2024-0067

Fecha:  28 de junio de 2024

Tribunal de Apelaciones:

    Panel V

Representantes legales de la parte peticionaria:

    Lcdo. Rafael E. Rodríguez Rivera
    Lcdo. Luis José Torres Asencio
    Lcdo. Pedro J. Cabán Vales

 Representante legal de la parte recurrida:

    Lcdo. Nelson Hernández Delgado

Materia: Resolución del Tribunal con Voto particular disidente.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |  |
|---|---|---|
| Ramón Lugo Morillo<br><br>Recurrido<br><br>v.<br><br>Elizabeth Natera Montilla<br><br>Peticionaria | CC-2024-0067 | Certiorari |

RESOLUCIÓN

En San Juan, Puerto Rico, a 28 de junio de 2024.

Examinada la *Moción de reconsideración*, se declara no ha lugar.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Martínez Torres está conforme y hace constar la siguiente expresión, a la cual se unieron la Jueza Asociada señora Pabón Charneco y los Jueces Asociados señores Kolthoff Caraballo, Rivera García y Feliberti Cintrón:

> La alegación de que existe una comunidad de bienes entre dos personas no derrota una acción de desahucio instada por el único dueño de una propiedad. Mucho menos crea un conflicto de título entre ambos. A lo sumo, la comunera tiene derecho a probar la existencia de la comunidad en otro pleito y a ser resarcida por su aportación, si prevalece. Eso no se dilucida en una acción de desahucio, por lo que cualquier pregunta al respecto es impertinente a lo que el Tribunal tiene ante sí. El desahucio se reclama mediante el procedimiento sumario estatuido. En todo caso, los derechos de la comunera se deben atender en un pleito separado que no es este. Cualesquiera otros argumentos o teorías son ajenas al Derecho.

La Jueza Presidenta Oronoz Rodríguez y los Jueces Asociados señores Estrella Martínez y Colón Pérez reconsiderarían y declararían con lugar la *Moción de Ayuda Legal Puerto Rico para comparecer como Amicus Curiae en apoyo a la expedición del certiorari* y la *Moción de Inter-Mujeres Puerto Rico para solicitar intervención como amicus curiae*. La Jueza Presidenta Oronoz Rodríguez emitió un Voto particular disidente al cual se unieron los Jueces Asociados señores Estrella Martínez y Colón Pérez.


                              Javier O. Sepúlveda Rodríguez
                              Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ramón Lugo Morillo

    Recurrido

      v.                        CC-2024-0067

Elizabeth Natera Montilla

    Peticionaria

La Jueza Presidenta ORONOZ RODRÍGUEZ emitió un Voto particular disidente a la cual se unen el Juez Asociado señor ESTRELLA MARTÍNEZ y el Juez Asociado señor COLÓN PÉREZ

En San Juan, Puerto Rico, a 28 de junio de 2024.

Hoy teníamos la oportunidad para discutir cuál debería ser el proceder en situaciones en las que se pretende desahuciar a una mujer de la residencia que compartió durante casi tres décadas con su expareja, cuando alega que existe un conflicto de título que surge de las aportaciones económicas que hizo al bienestar del hogar. Por entender que la naturaleza de las alegaciones y los derechos que reclama la Sr. Elizabeth Natera Montilla (señora Natera Montilla) hacen necesario que el pleito de desahucio se dilucide mediante la vía ordinaria, disiento respetuosamente del proceder de una mayoría de esta Curia de denegar el recurso de revisión de epígrafe.

**I**

El 25 de enero de 2023 el Sr. Ramón Antonio Lugo Morillo (señor Lugo Morillo) presentó una demanda de desahucio en precario contra la señora Natera Montilla. El señor Lugo Morillo manifestó ser dueño de la propiedad ubicada en la Calle 12 NE, 1112, Urb. Puerto Nuevo, Barrio Monacillo, Río Piedras, PR; y que la señora Natera Montilla vivía la propiedad "sin pagar canon o merced de clase alguna y lo hace de forma precarista".[1] Añadió que le había requerido a la señora Natera Montilla que desocupara la propiedad, pero sostuvo que esta se había negado. Por ello, solicitó que se decretase su desahucio, desalojo y lanzamiento.

El 26 de enero de 2023 el Tribunal de Primera Instancia expidió el emplazamiento correspondiente y señaló una vista para el 3 de febrero de 2023.

El 3 de febrero de 2023 ambas partes comparecieron a la vista señalada mediante videoconferencia. La representación legal de la señora Natera Montilla anticipó que estaría sometiendo una alegación responsiva o presentado una contestación a la demanda con el fin de traer a la atención del tribunal los planteamientos sobre conflicto de título ante la existencia de una comunidad de bienes. Culminada la argumentación entre las partes, el foro primario determinó reseñalar la vista de desahucio en su fondo para el 10 de febrero de 2023.

---

[1] Apéndice del expediente, pág. 70.

El 9 de febrero de 2023 la señora Natera Montilla presentó un *Escrito en solicitud de desestimación de la demanda presentada y/o en la alternativa la conversión del presente caso a uno ordinario*. Por medio de dicho escrito, alegó afirmativamente que vivía desde el 1995 con el señor Lugo Morillo, de forma voluntaria, en una relación de concubinato *more uxorio*, cohabitando estable y permanentemente, y anteponiendo la lealtad y la fidelidad. Manifestó que mantuvieron una relación de más de veintisiete (27) años, durante los cuales tuvieron dos (2) hijos que fallecieron y otros dos (2) que ya advinieron a la mayoría de edad.

Alegó, además, que por todo ese tiempo mantuvieron una comunidad de bienes. En dicha moción señaló que, para el momento en que la relación comenzó, el señor Lugo Morillo estudiaba en la Universidad Politécnica y fue ella quien lo apoyaba económicamente, con su esfuerzo y trabajo, para que pudiera completar su carrera universitaria. Posteriormente, con el producto del trabajo y esfuerzo de ambos, adquirieron la propiedad en controversia, la cual se convirtió en el hogar familiar; en especial, donde criaron a su hija e hijo, y donde actualmente vivía ella con su hija y nieto.

Además, arguyó que aportaba a los pagos del servicio de energía eléctrica y asumía, a exclusión del señor Lugo Morillo, las tareas domésticas de cuidado y mantenimiento del hogar, además del cuidado y crianza de los hijos menores.

Añadió que, con el acuerdo de ambos, se adquirió un vehículo que inicialmente estuvo a su nombre y posteriormente se traspasó a nombre del señor Lugo Morillo.

Finalmente, la señora Natera Montilla relató cierto incidente que ocurrió entre ella y el señor Lugo Morillo que, según ella, lo motivó a que se presentara la demanda en desahucio. Explicó que una noche en noviembre de 2022, la pareja tuvo una discusión en la cual la señora Natera Montilla le solicitó al señor Lugo Morillo que abandonara el hogar porque sentía temor por su seguridad. Al este negarse, ella se comunicó con la Policía de Puerto Rico para solicitar su auxilio. Alegó que los agentes de la Policía le instruyeron al señor Lugo Morillo que debía desalojar el hogar y finalmente este acató las instrucciones de los agentes. En respuesta a dicha situación, el 20 de diciembre de 2022 el señor Lugo Morillo le requirió que desalojara la propiedad y posteriormente presentó el recurso de desahucio en precario.

En vista de lo anterior, la señora Natera Montilla solicitó la desestimación de la demanda tas argüir que su condición de comunera imposibilitaba que fuera despojada de la posesión de la propiedad mediante una acción de desahucio. En la alternativa, solicitó la conversión del procedimiento a uno ordinario, pues existía un conflicto de título y otras particularidades que impedían que el caso se tramitase mediante el procedimiento sumario.

El 10 de febrero de 2023 el señor Lugo Morillo presentó un escrito en oposición. Sostuvo que el concubinato no presumía la existencia de una comunidad de bienes entre los concubinos y que la mera alegación de que existía un conflicto de título no era suficiente para derrotar la acción de desahucio. Ahora bien, no hizo referencia a los señalamientos específicos sobre las contribuciones de la señora Natera Montilla a la referida comunidad.

El foro primario denegó la moción dispositiva de la señora Natera Montilla y ese mismo día las partes comparecieron para celebrar la vista de desahucio en su fondo. Durante la vista, la señora Natera Montilla solicitó reconsideración, pero esta fue denegada.

Así las cosas, el 5 de abril de 2023 lograron celebrar la vista de desahucio. Allí, testificaron el señor Lugo Morillo, la Sra. Nicole Lugo Natera, hija de las partes, y la señora Natera Montilla. Durante el contrainterrogatorio del señor Lugo Morillo, el tribunal **no permitió a la representación legal de la señora Natera Montilla hacer preguntas relacionadas a la comunidad de bienes, el hecho de que la señora Natera Montilla trabajó durante la totalidad de los años que convivieron juntos, en qué manera ella lo apoyó económicamente mientras él cursaba sus estudios de ingeniería, los trámites de compraventa del hogar en controversia ni otros asuntos relacionados a las aportaciones económicas de la señora Natera Montilla.**

Sin embargo, el señor Lugo Morillo sí testificó que la señora Natera Montilla no era una extraña para él, sino que fue su compañera y que habían convivido desde que se adquirió la propiedad hasta el 20 de noviembre de 2022, fecha en que la Policía lo removió del hogar. Más aún, testificó que, para él, la señora Natera Montilla se convirtió en precarista una vez la Policía lo hizo abandonar la casa luego de que ella le denunciara. Aceptó que para los años anteriores no la consideraba precarista.

Por otro lado, durante el testimonio de la señora Natera Montilla el Tribunal tampoco permitió preguntas ni evidencia sobre los trámites de la compraventa de la casa en el 2007, las planillas de contribución sobre ingresos que rendían de manera conjunta, el crédito de contribuciones por los hijos dependientes que solicitaron al Gobierno federal, la comunidad de bienes constituida entre ambos ni los ingresos de la señora Natera Montilla.

El 19 de abril de 2023 el foro primario concedió la acción de desahucio. Concluyó que la titularidad del señor Lugo Montilla sobre el inmueble en controversia había quedado demostrada, así como también se había demostrado que la señora Natera Montilla no tenía título o derecho alguno de su posesión. Consecuentemente, ordenó el desalojo de la propiedad en un término de veinte (20) días, contados a partir de que el dictamen fuera final y firme.

Inconforme con dicha determinación, y enfrentándose al

inminente lanzamiento del que ha sido su hogar desde el 2007, la señora Natera Montilla presentó un escrito de apelación ante el Tribunal de Apelaciones.

Con el beneficio de la comparecencia de las partes, así como la transcripción de la prueba oral estipulada, el Tribunal de Apelaciones emitió una Sentencia en la que confirmó al Tribunal de Primera Instancia. El foro apelativo intermedio razonó que la decisión de convertir un proceso sumario a uno ordinario es un asunto discrecional y no encontraron razón alguna para intervenir con la determinación del foro primario. El Tribunal expresó que los gastos realizados por la señora Natera Montilla no constituían un conflicto de título y que cualquier reclamo relacionado a la existencia de una comunidad de bienes debía ventilarse en un pleito independiente.

Inconforme con la determinación del foro apelativo, la señora Natera Montilla compareció ante nos mediante un recurso de *certiorari*. Por medio de este, hizo los señalamientos de error siguientes:

> (1) Erró el Tribunal de Apelaciones al confirmar la Sentencia del Tribunal de Primera Instancia, pese a que la acción de epígrafe no podía tramitarse conforme al procedimiento de desahucio.
>
> (2) Erró el Tribunal de Apelaciones al confirmar la Sentencia del Tribunal de Primera Instancia y, en consecuencia, no permitir a la parte peticionaria presentar prueba sobre la comunidad de bienes existentes entre Elizabeth Natera Montilla y Ramón Lugo Morrillo, así como sobre los gastos y aportaciones económicas hechas por la Sra. Natera Montilla a la Propiedad y al hogar constituido entre ambos.
>
> (3) Erró el Tribunal de Apelaciones al confirmar la Sentencia del Tribunal de Primera Instancia y resolver

que "cualquier asunto relacionado a la alegada comunidad de bienes, o asociado a cuantías realizadas para el mantenimiento de la propiedad, debe ventilarse en pleito independiente".

(4) Erró el Tribunal de Apelaciones al confirmar la Sentencia del Tribunal de Primera Instancia y, en consecuencia, ordenar el lanzamiento de la peticionaria Elizabeth Natera Montilla, víctima de violencia de género, según solicitado por su agresor, el recurrido Ramón Lugo Morillo, revictimizándola y privándole de una vivienda sobre la cual tiene una comunidad de bienes con el recurrido.

En su recurso arguyó que no estamos ante el tipo de caso para el cual se diseñó el procedimiento sumario de desahucio. Así, pues casos de desalojos de exparejas en los que se presentan reclamos complejos, como la existencia de una comunidad de bienes, el derecho a la retención de la propiedad hasta tanto se rembolsen los gastos y aportaciones económicas realizadas durante la relación, o los gastos necesarios y útiles realizados en la propiedad, deben ser dilucidados en procesos ordinarios. La señora Natera Montilla indicó que el proceso sumario no se estatuyó con el propósito de dilucidar este tipo de controversia, sino para promover el mercado de arrendamiento de vivienda privada. A estos efectos, citó la Exposición de Motivos de la Ley Núm. 129-2007, la cual indica lo siguiente:

> Esta Ley enmienda distintos artículos del Código de Enjuiciamiento Civil de 1933, según enmendado, con el propósito de agilizar y uniformar el procedimiento de desahucio contra personas que detentan la posesión material o disfrute de una propiedad inmueble precariamente, sin pagar canon o merced alguna.
>
> [.....]
>
> **Con todo ello, se pretende agilizar y clarificar el derecho aplicable y propiciar el desarrollo del mercado de arrendamiento de viviendas.**
> Exposición de Motivos de la Ley Núm. 129-2007 (2007 Leyes de Puerto Rico 748-49) (énfasis suplido).

Además, citó la Exposición de Motivos de la Ley Núm. 86-2011, la cual enmendó varios de los artículos que rigen sobre el proceso de desahucio:

> **La legislación vigente debe estimular el mercado de alquiler y fomentar la disposición de los dueños de viviendas a darlas en arrendamiento.** A esos fines, esta Ley enmienda los Artículos 625, 629 y 632 del Código de Enjuiciamiento Civil de 1933, según enmendado, **con el propósito de agilizar el procedimiento de desahucio y propiciar el desarrollo del mercado de arrendamiento de viviendas.**
> Exposición de Motivos de la Ley Núm. 186-2011 (2011 Leyes de Puerto Rico 1611) (énfasis suplido).

En vista de lo anterior, la señora Natera Montilla planteó que la demanda de desahucio es producto de una disputa entre dos personas que convivieron hasta el día en que la Policía le indicó al señor Lugo Morillo que debía abandonar la propiedad, por lo que no procedía argumentar que su acción estaba enmarcada dentro de los intereses para los cuales existe el procedimiento sumario de desahucio.

Además, esbozó que tampoco debe proceder el desahucio mediante un proceso sumario cuando este no es más que un acto de represalia por una denuncia presentada ante la Policía por parte de una persona que se siente amenazada y se percibe como víctima de su expareja.

Finalmente, la señora Natera Montilla arguyó que, incluso si lo anterior no fuese razón suficiente para revocar los dictámenes de los foros inferiores, en el caso de autos existían otros elementos que exigían que el caso se llevara por la vía ordinaria, a saber: la existencia de una comunidad

de bienes entre ambos por casi tres décadas y su derecho a presentar prueba sobre el particular.

Las organizaciones Inter-Mujeres Puerto Rico (Inter-Mujeres) y Ayuda Legal Puerto Rico (Ayuda Legal) comparecieron ante nos mediante solicitudes de intervención en carácter de *amicus curiae*.

Ayuda Legal indicó que el recurso ante la consideración de este Tribunal es de gran importancia para el acceso a la justicia de las poblaciones a las que brindan servicio, en específico, personas demandadas en desahucio y sobrevivientes de violencia doméstica. Además, sostuvo que este caso nos brinda la oportunidad de aclarar los requisitos para convertir un pleito sumario de desahucio en un procedimiento ordinario, particularmente cuando se trata del reclamo de una mujer para que se valore su aportación al bienestar y sustento del hogar y sus derechos en una relación de pareja, cuando los tribunales inferiores se han rehusado a hacerlo. También arguyó que

> [n]o admitir el proceso ordinario es el equivalente de silenciar, vía judicial, la voz de una mujer que alega que por más de 27 años aportó su tiempo y sus recursos materiales para construir un hogar para ella, quien fuera su pareja y el padre de cuatro hijos.[2]

Finalmente, Ayuda Legal invitó a este Tribunal a considerar las maneras en las cuales las determinaciones de los foros inferiores legitiman la violencia económica al negarle el derecho a una mujer a tener su día en corte. De

---

[2] Moción de Ayuda Legal Puerto Rico para comparecer como *amicus curiae* en apoyo a la expedición del certiorari, pág. 2.

esta manera, definieron la violencia económica como el menoscabo de la capacidad financiera presente o futura, la estabilidad económica o la seguridad habitacional y de vivienda a través de la restricción o privación de acceso, dinero o asistencias gubernamentales.

Por su parte, Inter-Mujeres planteó que, dentro del contexto de la división de la comunidad de bienes que se crea en una relación de concubinato *more uxorio*, para determinar cuál fue la aportación de cada individuo debemos tomar en consideración "no solo la titularidad legal sobre los bienes, sino también el valor de los servicios de apoyo mediante el cuidado de la pareja y de la prole, el cuidado del hogar y la administración cotidiana de los aspectos relacionados a la alimentación, vestimenta, salud y educación de la prole y de la pareja".[3] A esos efectos, es necesario que la parte que dedicó años a brindar apoyo, cuidados y solidaridad a la familia y a su pareja, se le permita la oportunidad de probar la existencia de una comunidad de bienes y, mediante prueba al efecto, poder establecer el valor de su participación y aportación a los bienes adquiridos.

Finalmente, Inter-Mujeres apuntó a que nuestro ordenamiento reconoce un derecho fundamental a la igualdad y prohíbe la discriminación por género. En lo pertinente, arguyeron que

> [n]o reconocer el trabajo de cuidados que realiza una de las personas integrante de la pareja, sea

---

[3] Escrito de *amicus curiae* de Inter-Mujeres Puerto Rico que acompaña moción en solicitud de intervención, pág. 10.

> matrimonial o de hecho, por años atenta contra el derecho fundamental a la igualdad. No reconocer […] su trabajo en el hogar, el cuidado de la prole, la preparación de alimentos o las contribuciones a los gastos cotidianos familiares, coloca a una parte en situación de desventaja, desigualdad y permite un enriquecimiento injusto de quien pudo lograr sus metas profesionales o adquirir propiedades gracias a que la otra parte de la pareja mantenía todo a flote en el hogar.[4]

Una Mayoría de mis compañeros y compañera de estrado ha decidido no expedir el recurso ante nos. Por ello, me parece que desaprovechamos la oportunidad de expresarnos en cuanto a la invisibilización de las aportaciones económicas de una mujer al sustento del hogar al momento de vindicar derechos ante nuestros Tribunales. También desaprovechamos la oportunidad de hacer justicia permitiéndole a la señora Natera Montilla presentar prueba sobre la existencia de una comunidad de bienes y un posible reclamo de titularidad sobre la propiedad en controversia. Así, se deja inalterada la determinación mediante la cual se decreta el desahucio, desalojo y lanzamiento de la señora Natera Montilla. Ello a pesar de que el proceso sumario de desahucio nunca se concibió para atender hechos como los aquí planteados. Por las razones que expondré, disiento de este proceder.

## II

El desahucio es el medio que tiene una persona que sea dueña o dueño de un inmueble para recobrar judicialmente la posesión de este. Este proceso puede solicitarse en un proceso ordinario o en un proceso sumario. El desahucio

---

[4] Escrito de *amicus curiae* de Inter-Mujeres Puerto Rico que acompaña moción en solicitud de intervención, pág. 15.

sumario es un procedimiento reglamentado por los Arts. 620-634 del Código de Enjuiciamiento Civil, 32 LPRA secs. 2821-2838, en el cual se busca atender rápidamente la reclamación del dueño o de la dueña de un inmueble que ve interrumpido el derecho a poseer y disfrutar de su propiedad. ATPR v. Vomar-Mathieu, 196 DPR 5, 9-10 (2016); Turabo Ltd. Partnership v. Velardo Ortiz, 130 DPR 226, 234-235 (1992); Mora Dev. Corp. v. Sandín, 118 DPR 733, 749 (1987). Así, mediante esta acción especial se recupera la posesión de hecho de un bien inmueble mediante el lanzamiento o la expulsión del arrendatario o precarista que lo detente sin pagar canon o merced alguna. ATPR v. Vomar-Mathieu, supra.

Es doctrina general establecida por este Tribunal que los conflictos de título no pueden dilucidarse en el juicio de desahucio por ser este uno de carácter sumario en que únicamente se trata de recobrar la posesión de un inmueble por quien tiene derecho a ella. CRUV v. Román, 100 DPR 318, 321 (1971). Así, generalmente en estas acciones debe limitarse la concurrencia o consolidación de otras acciones o defensas. ATPR v. Vomar-Mathieu, supra, pág. 10. Por ello, hemos reconocido la necesidad de que ocasionalmente el procedimiento sumario de desahucio se convierta en uno ordinario.

A tono con tal doctrina, si un demandado o una demandada en desahucio produce prueba suficiente que tienda a demostrar

que tiene algún derecho a ocupar un inmueble y que tiene un título tan bueno o mejor que el del o de la demandante, surge un conflicto de título que hace improcedente que se dilucide la acción de desahucio por la vía sumaria. Íd. Por eso, hemos advertido que **cuando el demandado o la demandada presenta otras defensas afirmativas relacionadas con la acción de desahucio, éste puede solicitar que el procedimiento se convierta al trámite ordinario**. ATPR v. Vomar-Mathieu, *supra*; Jiménez v. Reyes, 146 DPR 657 (1998); Mora Dev. Corp. v. Sandín, *supra*, págs. 747-748. "Una vez esgrimidas estas defensas, el juzgador deberá auscultar sus méritos, los hechos específicos que se aducen y discrecionalmente ordenar la conversión del procedimiento al juicio ordinario". Turabo Ltd. Partnership v. Velardo Ortiz, 130 DPR 226 245-46 (1992).

Debe señalarse que, para justificar el cambio a un proceso ordinario, al igual que sucede cuando se plantea un conflicto de título, no basta una mera alegación para que prospere la defensa. Marín v. Montijo, 109 DPR 268, 278 (1979); Pérez v. Castro, 52 DPR 274, 282 (1937). Sin causar dilaciones en el proceso, la parte demandada debe, en el momento oportuno, presentar prueba que lleve al ánimo del juzgador la razonable certeza de sus defensas. Por ello, más allá de sus alegaciones, la parte demandada debe demostrar con hechos específicos que se justifica convertir el procedimiento en uno ordinario. Turabo Ltd. Partnership v. Velardo Ortiz, *supra*. En tal caso, la reclamación estará

sujeta a las reglas de la litigación civil ordinaria, excluyendo la legislación especial que reglamenta el desahucio sumario y sus restringidos plazos y condiciones. ATPR v. Vomar-Mathieu, *supra*.

A modo ilustrativo, en Marín v. Montijo, *supra*, este Tribunal consideró el efecto de que un arrendatario levantara, ante una demanda de desahucio en precario, una defensa alegando que tenía derecho a retener el bien hasta tanto le reembolsaran los costos de las reparaciones que realizara. Este Tribunal ordenó la paralización de una sentencia que declaró ha lugar una demanda de desahucio a través del proceso sumario hasta tanto el Tribunal determinara la cantidad que se le adeuda al inquilino por concepto de reparaciones necesarias.

**III**

Este Tribunal tuvo ante sí la oportunidad de corregir una determinación del foro primario por la cual se declara ha lugar una demanda de desahucio en precario, mediante el procedimiento sumario, a pesar de que la señora Natera Montilla alegó de manera específica que tenía derecho a ocupar la vivienda e intentó presentar prueba a esos fines. De esta manera, se le cierra efectivamente la puerta de nuestros tribunales para presentar evidencia acreditativa de la existencia de una comunidad de bienes *more uxorio* y sobre la posibilidad de que ostente un derecho legítimo sobre la propiedad en cuestión, la cual ha habitado por casi tres

décadas. Se le imposibilita, además, presentar prueba sobre sus contribuciones económicas a la comunidad de bienes y la labor llevada a cabo para el mantenimiento de lo que fue el hogar familiar compartido, donde aún habita una hija y un nieto.

No puedo coincidir con este curso de acción que despacha livianamente los planteamientos de la señora Natera Montilla.

Tal y como permite nuestro ordenamiento, ante una demanda de desahucio en precario, la señora Natera Montilla solicitó que el pleito se dilucidara a través del proceso ordinario. Arguyó que existía una controversia genuina sobre su derecho a la tenencia de la propiedad y que esta no era apta para dilucidarse mediante el procedimiento sumario. No basó su solicitud en meras alegaciones generalizadas, sino que explicó en detalle cómo sus contribuciones económicas y de labor doméstico en beneficio del hogar familiar, además de las dinámicas económicas entre la pareja, crearon una comunidad de bienes *more uxorio* y un derecho a una porción de la titularidad del bien inmueble en controversia. **Como dijimos en <u>Turabo Ltd. Partnership v. Velardo Ortiz</u>,** *supra*, **una vez esgrimidas estas defensas afirmativas, el foro primario debió auscultar sus méritos y los hechos específicos, y ordenar la conversión del procedimiento al juicio ordinario.**

Conforme le permite nuestro ordenamiento jurídico, la señora Natera Montilla intentó presentar prueba que

sustentara sus defensas en la vista de desahucio del 5 de abril de 2023. Allí, solicitó del Tribunal que le permitiera presentar evidencia y testificar sobre la existencia de una comunidad de bienes constituida entre las partes; los trámites que se llevaron a cabo para la compraventa del inmueble; el hecho de que ella trabajaba y aportaba económicamente al sustento del hogar; las planillas de contribución sobre ingresos que rendían de manera conjunta; el crédito de contribuciones por hijos dependientes que solicitaron al Gobierno federal; y sus ingresos. Sin embargo, y a pesar de la materialidad de esta evidencia con relación al derecho de la señora Natera Montilla a mantener la posesión del inmueble, el Tribunal de Primera Instancia no le permitió presentar evidencia ni testificar al respecto.

No cabe duda de que el foro primario abusó de su discreción al disponer de la controversia sumariamente, sin tan siquiera permitirle a la señora Natera Montilla presentar evidencia que pudiese ponerlo en posición para considerar convertir el pleito al proceso ordinario. Ante alegaciones específicas y detalladas que alertaran al Tribunal de la posibilidad genuina de que la señora Natera Montilla ostentara un derecho a permanecer en el inmueble, procedía celebrar una vista evidenciara. En esta, el Tribunal debió permitirles a las partes presentar prueba relacionada a las alegaciones sobre los trámites que se llevaron a cabo para la compraventa del inmueble, la existencia de una comunidad

*more uxorio* y cualquier crédito que tuviese la señora Natera Montilla que pudiese justificar un derecho a retener la posesión del inmueble.

Al negarse a expedir el recurso ante nos, una mayoría de este Tribunal avala, *sub silentio*, el abuso de la naturaleza sumaria del procedimiento de desahucio, que muy bien pudiera estar siendo utilizado para penalizar a la señora Natera Montilla por la ruptura sentimental y por haber solicitado la asistencia de las autoridades pertinentes para que el señor Lugo Morillo abandonara la propiedad ante una alegación de violencia doméstica. Los Tribunales no podemos dispensar de la justicia a la ligera. Debemos ser celosos de que no se nos utilice para perpetuar daños a personas con intereses legítimos a ser considerados en un proceso apropiado para ello. Negarle a la señora Montilla Natera la oportunidad de retener un inmueble que probablemente invirtió de su pecunio y trabajo para sostener, es invisibilizar la aportación esencial de la mujer en el sostén del hogar y en la prosperidad del núcleo familiar. Esto, sin que tan siquiera tuviese la oportunidad de que un Tribunal tuviese ante si todos los elementos necesarios para determinar la validez de sus reclamos.

**IV**

Por entender que procedía expedir el recurso y, luego de los tramites de rigor, devolver el caso al Tribunal de

Primera Instancia para que el procedimiento continuara mediante el trámite ordinario, me veo obligada a disentir.


                                        Maite D. Oronoz Rodríguez
                                             Jueza Presidenta